[No. H027830. Sixth Dist. June 29, 2005.]

HOUSING AUTHORITY OF THE COUNTY OF MONTEREY, Plaintiff and Respondent, v.
MICHAEL JONES, Defendant and Appellant.

**COUNSEL**

Law Offices of Richard H. Rosenthal and Richard H. Rosenthal for Defendant and Appellant.

Grunsky, Pybrum, Ebby & Rarrar and Cheryl Carlson for Plaintiff and Respondent.

## Opinion

**WALSH, J.**[*]—A defendant in a limited-jurisdiction commercial unlawful detainer case made a pretrial motion for a trial continuance and resisted a discovery protective order in order to pursue his defense that he was the victim of a governmental taking without compensation. After rulings against him, defendant proceeded to trial before a different judge, where he again lost. Defendant appealed the judgment to the superior court appellate division. Over defendant's objection, the judge who decided the pretrial motions against him sat on the appellate division panel and joined in the decision affirming the judgment for the plaintiff.

In a partially published opinion, the appellate division concluded that Code of Civil Procedure sections 170.1, subdivision (b) (section 170.1(b)) and 170.5, subdivision (f),[1] did not require the judge's disqualification from the panel because, under these sections, the pretrial proceeding heard by the judge was not the same "proceeding" that was the subject of the appeal. The opinion cited concerns of small counties in maintaining the capacity to adequately fill assignments on both limited-jurisdiction calendars and the superior court's appellate division, and it noted the particular judge's unqualified expression of her ability to be fair and impartial in this case.

We conclude that, while this limited analysis of one aspect of section 170.1 was legally correct on this record, it stopped short of applying this controlling statute in its entirety. The judge's disqualification from the appellate division panel was compelled, not by application of subdivision (b) of this section, nor as the result of an actual conflict nor any doubts about her integrity, but rather because of the proscriptions of subdivision (a)(6)(C), which are aimed at the need to avoid even the appearance of impropriety—specifically, that a person aware of the judge's prior involvement in the case "might reasonably entertain a doubt that the judge would be able to be impartial." We therefore reverse the appellate division's decision.

### Background

#### 1. *Proceedings in the Superior Court*

In 1992, plaintiff Housing Authority of the County of Monterey (Housing) leased kitchen space on a month-to-month basis to a commercial, for-profit caterer, defendant Michael Jones, doing business as A Moveable Feast

---

[*] Judge of the Santa Clara Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] Further statutory references are to the Code of Civil Procedure unless otherwise noted.

(Jones). Though Jones himself was an ordinary commercial tenant, the leased space was located within Rippling River, a residential facility for Monterey County seniors and low-income and disabled residents, which was owned and operated by Housing.

The parties entered into an addendum to the lease in 2000. That same year, the county's department of health contacted Housing by letter. The letter was a notice of zoning violation, which stated that commercial uses were not permitted on the property, and that Jones's kitchen operation violated the local zoning ordinance and the conditional use permit issued for the property. It is not clear from the record whether Housing immediately did anything in response to the letter, but the department of health sent Housing another letter in 2003 regarding the same zoning violation. This letter referenced a prior period of voluntary compliance which had not been achieved, and it set a 90-day deadline by which Jones's commercial kitchen had to be removed from the premises.

Housing, as a public agency, apparently did not have the resources to seek appropriate variances to address the zoning violation. It decided at that point that it would be more economical to close Rippling River, which was by then at the end of its useful life, and build a new residential senior complex. Housing then made informal attempts with Jones to end the tenancy prior to the 90-day deadline imposed by the health department.

When informal efforts failed, Housing initiated an unlawful detainer action. Because the amount in controversy was less than $25,000 and all the other statutory criteria were met, the matter was classified and filed as a superior court limited-jurisdiction case under sections 85 and 86, subdivision (a)(4).

Within eight days of the filing of the complaint, Jones answered. His answer alleged an affirmative defense of "inverse condemnation." He contended that Housing had not made any effort to cure the zoning violation, that it could have done so easily, and that Housing had intentionally refused to do so in order to evict him on a pretext and sell the property, without paying him statutory relocation expenses under Government Code section 7260 and the value of his goodwill—all of which, he alleged, amounted to a governmental taking without compensation.

Two days later, Housing requested that the matter be immediately set for trial. Jones countered that request by asking for a later trial date to allow him to complete discovery that he had propounded on a range of topics. Those topics included the applicability of Government Code sections 7261 and

7262, which concern entitlement to relocation benefits for persons and businesses displaced "as a direct result of programs or projects undertaken by a public entity." (Gov. Code, § 7260.5, subd. (b).) Despite Jones's request, a short-cause court trial was set to take place exactly one month from the date the complaint was filed.

A few days after the setting of the trial date, Jones moved for a continuance based on the asserted complexity of the issues and his need to complete discovery, including with respect to his "affirmative defense" of inverse condemnation and his right to government relocation benefits. Housing opposed the motion, noting that unlawful detainer is an expedited summary form of proceeding under section 1159 et seq. to enable a property owner to quickly recover possession of a premises wrongfully held. Housing also countered with its own motion for a protective order to prevent Jones from conducting discovery that it considered irrelevant to and legally beyond the scope of the circumscribed unlawful detainer issues that center on the right to possession of the subject premises. As part of its motion, Housing specifically sought to limit any discovery with respect to the application of Government Code sections 7261 and 7262, part of Jones's "inverse condemnation" defense.

Judge Kay T. Kingsley concurrently heard both pretrial motions. The minute order from the hearing recorded that Judge Kingsley "state[d] for the record [her] understanding of the facts for trial." The minute order further reflected that Judge Kingsley denied Jones's motion to continue the trial and granted, in part, Housing's motion for a protective order as to issues that included conversations as to "zoning," among other things. The minute order finally related that the court had "not made any ruling as to plaintiff's case in chief or defendant's affirmative defenses." But central to the grant of the discovery protective order was Judge Kingsley's implicit legal judgment on the permitted scope of the unlawful detainer action and Housing's right to eliminate Jones's affirmative defenses from the matters in issue.

The case was subsequently tried in a single day before Judge Robert A. O'Farrell. In closing, Jones's counsel attempted to argue that Jones was entitled to relocation benefits under Government Code section 7260—the "inverse condemnation" defense. Then, the following exchange took place:

"THE COURT: Hasn't that already been ruled on?

"MR. ROSENTHAL: By [whom]?

"THE COURT: Judge Kingsley.

"MR. ROSENTHAL: Absolutely not, your Honor. . . . [A]s far as I am concerned, Judge Kingsley decided that 7260 applies to Housing Development actions. . . . [F]rankly, I didn't understand her ruling.

"THE COURT: You disagree with the ruling, but didn't she address it? . . . I thought I read a minute order that certainly read that way.

"MR. ROSENTHAL: I haven't seen her minute order, your Honor. If it reads that way, I am not going to argue with you. That is for sure."

Nothing further was said about whether Government Code section 7260 could be asserted in the unlawful detainer context, or whether this issue had already been decided by Judge Kingsley. Judge O'Farrell then found in favor of the plaintiff, Housing. Though the court did not specifically address the affirmative defense, Jones was not awarded any amount in relocation benefits. No statement of decision was requested and entry of judgment followed. Jones then sought a stay of execution on the judgment and Judge O'Farrell granted that application. Jones later filed a motion for relief from forfeiture of the lease between the parties, which Judge John N. Anton treated as a motion to extend the stay of execution on the judgment, and which he granted for a specified period of time. Meanwhile, Housing claimed costs and attorney fees by filing a memorandum of costs as the prevailing party. Jones filed a motion to tax costs in response, and he timely appealed from the judgment.[2] The motion to tax was continued by Judge Kingsley. It was later heard and determined by Judge O'Farrell, who awarded to Housing costs of $285.20 and attorney fees in the amount of $13,000.

Jones perfected his appeal from the judgment to the Monterey County Superior Court Appellate Division. In briefing, he contended that "Housing Authority was obligated to relocate [his] place of business pursuant to Government Code [section] 7260, et seq." and that the "trial court incorrectly prevented argument on this issue," citing Judge O'Farrell's above-quoted reference at trial to the minute order by which Judge Kingsley had limited the scope of pretrial discovery based on the circumscribed bounds of the unlawful detainer action. He also argued the merits of his right to assert Government Code section 7260 in response to an unlawful detainer action— the same legal issue concerning the permissible scope of the proceeding that Judge Kingsley had analyzed when deciding the pretrial discovery motion. Jones did not, however, specifically assign any error on appeal to Judge Kingsley's pretrial rulings, which were appealable only from the judgment rendered after trial—a later "proceeding."

---

[2] The appeal was initially docketed in this court due to clerical error. By this court's order, it was then transferred back to the Monterey County Superior Court Appellate Division.

Housing, for its part, contended that the "trial court correctly ruled that the issue of whether or not Government Code section 7260 applied in an unlawful detainer action had already been decided during the motion for protective order when [Judge Kingsley] ruled [that] the sole issue in the action was possession." Housing also reiterated its substantive arguments that the summary nature of unlawful detainer precluded Jones's assertion of Government Code section 7260 as a defense, and that this section did not apply to afford benefits to Jones in any event.

The case was then set for oral argument before an appellate panel composed of Judge Russell D. Scott, presiding; Judge Michael S. Fields; and Judge Kingsley, who the panel in its later decision observed was the "designated alternate for the appellate division panel." The decision also stated that Judge Susan M. Dauphiné, who was the third designated appellate division panel member, had recused herself under section 170.1.

The appellate division's decision noted that, at argument, Jones had raised the procedural matter that Judge Kingsley "had been involved with the case before trial" and "that due to her prior involvement, [she] perhaps should not participate in the review on appeal." The decision went on to state that before Jones had raised this concern, the panel had been aware of Judge Kingsley's prior involvement with the case, had researched the issue, and had concluded that, in view of the limited nature of her prior involvement in the pretrial matters, Judge Kingsley was qualified to hear the appeal from the judgment as one of the three appellate division panel members.

The appellate division's conclusion on this issue rested on a purely statutory analysis of section 170.1(b) and section 170.5, subdivision (f), the decision noting the absence of any cases directly on point. Its rationale was that specific to proceedings on review in the superior court, "a judge is disqualified from participating in any appellate review [only] of a proceeding she 'tried or heard.' The proceeding from which the appeal was taken [here] was the unlawful detainer tried by Judge O'Farrell, not the continuance/discovery motion heard by Judge Kingsley." (Original underscore.) The decision went on to observe that "[i]f every judge who handled (heard) any pretrial matter was thereby disqualified from participating in the appellate review of a subsequent trial in the case, it would create unnecessary confusion and waste, particularly in small counties, as pretrial matters must often be handled by judges filling in for absent judges. If the position asserted by appellant [were to be] adopted, a judge who simply sat at arraignments and handled a bail motion on a misdemeanor could not participate in the appellate review of the trial conducted a year later."

The panel's decision also noted that there had been no allegation against Judge Kingsley of actual bias or prejudice, and it stated that Judge Kingsley had "unambiguously expressed to the appellate panel her ability to fairly participate in the appellate review of the trial court's judgment." The decision then found that "Judge Kingsley [was] qualified to participate in this appellate review." After disposing of this issue, the decision went on to affirm the unlawful detainer judgment against Jones on the merits, without specifically addressing his claims regarding the applicability of Government Code section 7260 or his right to benefits thereunder.

Two of three members of the appellate division panel then certified for publication, under rules 976 and 976.1 of the California Rules of Court, that portion of its decision dealing with the disqualification issue. The reasons given for certification were that the decision had "concluded that a judge who hears a pretrial motion in a case is not thereby disqualified under [section] 170.1(b) from hearing the appeal from a judgment rendered in a subsequent trial by a different judge," and that this holding was one of first impression, there being no other published cases on the issue. The certification also noted that the decision involved a legal issue of continuing public interest, as it is likely that superior court judges serving on appellate division panels, "particularly in smaller counties, often hear pretrial matters in cases later appealed after trial. To the extent that [section] 170.1(b) could be misconstrued to require disqualification of a judge who [had] heard a minor pretrial matter unrelated to the issues on appeal, the decision rendered will help avoid unnecessary confusion and waste of judicial resources."

## 2. *Review in This Court*

One consequence of an action's being classified as a superior court limited-jurisdiction case is that it is initially appealable not to this court but to that superior court's appellate division. (Cal. Const., art. VI, §§ 4 & 11, subd. (b); Code Civ Proc., §§ 77 & 904.2.) Rule 106(c) of the California Rules of Court provides that when the judgment is final as to the appellate division in a case where the opinion has been certified for publication, the clerk must send to the Court of Appeal for the district a copy of the decision. The clerk of the Court of Appeal must either promptly file the decision or make a docket entry showing its receipt. Rule 65(b) requires the superior court clerk to transmit the record on transfer to the Court of Appeal along with the copy of the published decision.

Under section 911 and rule 62 of the California Rules of Court, a Court of Appeal may then, on its own, order a case transferred to itself for hearing and decision if the court determines under rule 64 that transfer is necessary to secure uniformity of decision or to settle an important question of law. Under

rule 64(c), within 20 days after the record on transfer is filed in the Court of Appeal, that court may order the matter so transferred. Rule 64(e) of the same rule permits the Court of Appeal on transfer to limit or specify the issues to be briefed and argued. Rule 68(a) also provides that on transfer, the Court of Appeal may "decide fewer than all the issues raised . . . ."

All of these procedures were implemented here. After the appellate division of the superior court certified part of its decision for publication, this court transferred the case to itself to secure uniformity of decision and to settle an important question of law. Upon transfer, this court limited the scope of the issues to be briefed and orally argued to the published portion of the appellate division's opinion, which concerned the question of Judge Kingsley's disqualification from the appellate division panel.

Thus, the single issue with which we are here concerned, and which we decide, is whether Judge Kingsley should have been disqualified from the superior court appellate division panel reviewing the judgment after trial because of her prior participation in the parties' respective pretrial motions for a trial continuance and for a discovery protective order. The issue is more generally stated as whether a superior court judge who has ruled in a contested pretrial proceeding may participate in appellate division review of a different proceeding in the same case—an issue of first impression, as noted by the appellate division's decision on the question. This is a pure question of law to which we devote independent review.[3]

*Analysis*

The conundrum here remains as a vestige of court structures and hierarchies that existed before trial court unification. "Prior to 1998, California counties had two major designations of civil courts—the superior courts and the municipal courts, and each court system had separate subject matter jurisdiction. . . . [¶] In 1998, the California Constitution was amended to permit unification of the municipal and superior courts in each county into a single superior court system having original jurisdiction over all matters formerly designated as superior court and municipal court actions. (Cal. Const., art. VI, § 5.) After unification, the municipal courts ceased to exist.

---

[3] "Independent review" here has two connotations—the usual description of the applicable standard of review plus an apt characterization of our labor in this case, the appellant having elected not to aid us (or himself) in our effort by filing an opening brief. Without an opening brief, there could likewise be no respondent's brief, and we have therefore conducted our review without the benefit of argument by either side.

[Citations.] Now civil cases formerly within the jurisdiction of the municipal courts are classified as 'limited' civil cases, while matters formerly within the jurisdiction of the superior [courts] are classified as 'unlimited' civil action[s]. (§§ 85, 88.)" (*Ytuarte v. Superior Court* (2005) 129 Cal.App.4th 266, 274 [28 Cal.Rptr.3d 474].) As a result of unification, limited jurisdiction cases of the superior court are appealed to that court's appellate division. (Cal. Const., art. VI, §§ 4 & 11, subd. (b); Code Civ. Proc., §§ 77 & 904.2.)

Thus, before unification, the issue with which we now contend rarely presented itself.[4] Judges of the municipal court heard and decided all matters, pretrial or trial, in cases within municipal court jurisdiction. An appeal from that court was reviewed by the appellate department of the superior court, which was composed entirely of superior, and not municipal, court judges. (Former Cal. Const., art. VI, §§ 5 & 11; see Stats. 1994, res. ch. 113, p. 8484; Code Civ. Proc., former § 77.) Because of the separateness between the municipal and superior courts, a judge who passed on any matter at the trial court level generally would not be in a position to later review either that or another disposition in the same case.

1998 brought the advent of trial court unification, which consolidated the superior and municipal courts. As noted, this was a constitutional change, and many statutes were also amended to accommodate or reflect it. (Cal. Const. art. VI, § 5(e); see Sen. Const. Amend. No. 4 (1995–1996 Reg Sess.) res. ch. 36, pp. 8615–8621; Recommendation: Trial Court Unification: Revision of Codes (July 1998) 28 Cal. Law Revision Com. Rep. (1998) p. 51.) Applicable here, the state Constitution was specifically amended to create an appellate division of the superior court, similar to the appellate department that existed under prior law. The amendment provided that: "In each superior court there is an appellate division. The Chief Justice shall assign judges to the appellate division for specified terms pursuant to rules, not inconsistent with statute, adopted by the Judicial Council to promote the independence of the appellate division." (Cal. Const. art. VI, § 4; see also *id.*, art. VI, § 11, subd. (b).)

 Section 77, the implementing statute, was also amended to reflect trial court unification. That section now provides for an "appellate division of the superior court consisting of three judges or, when the Chief Justice finds it necessary, four judges." (§ 77, subd. (a).) This section also now directs the

---

[4] We recognize that there were situations, such as where a judge was elevated from the municipal to the superior court or sat by assignment, or during the period of trial court coordination that preceded unification, where the present circumstances could have presented themselves.

Chief Justice to "assign judges to the appellate division for specified terms pursuant to rules, not inconsistent with statute, adopted by the Judicial Council to promote the independence and quality of each appellate division. Each judge assigned to the appellate division of a superior court shall be a judge of that court, a judge of the superior court of another county, or a judge retired from the superior court or a court of higher jurisdiction in this state." (*Ibid.*) Finally, subdivision (g) of section 77 specifically directs the Judicial Council to "promulgate rules, not inconsistent with law, to promote the independence of, and govern the practice and procedure and the disposition of the business of the appellate division."

Consistent with that statutory direction, the Judicial Council promulgated rule 100.5 of the California Rules of Court. This rule concerns appellate division assignments and provides, at subdivision (a), that "[t]he Chief Justice, in making appointments to the appellate division of the superior or unified court, will consider the goal of promoting the independence and the quality of the appellate division." One of the factors to be considered in such assignments is the "degree of separateness of the appellate division work from the judge's regular assignments . . . ." (Cal. Rules of Court, rule 100.5(b)(3).) The rule finally provides that assigned judges may include "judges from another county; judges retired from the superior or unified court, or court of higher jurisdiction; or a panel of judges from different superior or unified courts who sit in turn in each of those superior or unified courts." (Cal. Rules of Court, rule 100.5(c).)

Thus, the independence of the judges assigned to the appellate division was emphasized and promoted by these constitutional, statutory, and rule changes that implemented and accommodated trial court unification. With particular relevance to small counties with fewer superior court judges, these provisions allow for retired judges of equal rank, or superior court judges from another county, to sit on appellate division panels.[5]

Despite unification, superior court appellate division panels continue to sit much as the former superior court appellate departments did prior to this structural change. But now, the panels review decisions of their peers instead of those made by a lower court. And, as happened in this case and is likely to recur with frequency in small counties, a judge assigned to an appellate division panel to review a proceeding may have already decided another

---

[5] Since the term "small" in reference to the size of a county is relative, it is sufficient to note here that as of this writing, "[i]n the County of Monterey, there are 18 judges of the superior court," whereas in San Benito County, there are two; in Santa Clara County, there are 79; and in Los Angeles County, there are 429. (Gov. Code, §§ 69586, 69590, 69593.5, 69600.)

contested proceeding at the trial court level in that same case. We surmise that the reason this awkward scenario persists is that the statutory judicial disqualification provisions governing judges of the superior court have not been amended by the Legislature following trial court unification. Thus, they do not particularly provide for and promote the same independence of appellate division panels that the above-cited authorities specifically contemplated as a goal.

■ Among the judicial disqualification provisions applicable in the superior court, section 170.1(b) is the only one specific to appellate review. The appellate division here rested its conclusion that Judge Kingsley could remain on the panel reviewing the judgment on the plain meaning of this section, in conjunction with the definition of "proceeding" under section 170.5, subdivision (f). Section 170.1(b) provides that "[a] judge before whom a proceeding was tried or heard shall be disqualified from participating in any appellate review of *that proceeding*." (Italics added.) Section 170.5, subdivision (f), defines "proceeding" as "the action, case, cause, motion, or special proceeding to be *tried or heard* by the judge."[6] (Italics added.)

■ As the appellate division here concluded, section 170.1(b) applied in its current form and according to its plain language, does not require the disqualification of a judge from a superior court appellate division panel where that same judge has heard a contested pretrial motion in a limited-jurisdiction case and the appeal is from the subsequent judgment, for the reason that the panel is not reviewing the same "proceeding" that was previously heard by that particular judge.

Thus, on this record, the appellate division was correct in its determination that, because Judge Kingsley did not try or hear the "proceeding" under appeal, i.e., the trial that resulted in judgment, she was not disqualified *under these subsections* from sitting on the appellate division panel reviewing that

---

[6] We note for clarity that these sections do not apply to appellate justices (§ 170.5, subd. (a)), who are instead bound by canon 3E of the California Code of Judicial Ethics concerning disqualification. That said, canon 3E contains language similar to section 170.1. For example, canon 3E(4) provides: "An appellate justice shall disqualify himself or herself in any proceeding if for any reason: [¶] (a) the justice believes his or her recusal would further the interest of justice; or [¶] (b) the justice substantially doubts his or her capacity to be impartial; or [¶] (c) the circumstances are such that a reasonable person aware of the facts would doubt the justice's ability to be impartial. [¶] (5) Disqualification of an appellate justice is also required in the following instances: [¶] . . . [¶] (f) The justice (i) served as the judge before whom the proceeding was tried or heard in the lower court . . . ." Unlike the parallel sections of the Code of Civil Procedure governing superior court judges, the Judicial Canons do not define "proceeding" as the term is used in canon 3E.

judgment. Strictly speaking, this is true even though the parties raised contentions on appeal concerning the effect at trial of Judge Kingsley's pretrial ruling, and notwithstanding Judge O'Farrell's comments at trial about the scope or preclusive effect of that ruling. After all, the minute order from the pretrial motions heard by Judge Kingsley specifically stated that the court was, in fact, *not* making any "ruling as to plaintiff's case in chief or defendant's affirmative defenses." And the ruling with regard to Housing's pretrial motion for a protective order was only a discovery matter that did not concern or limit the issues reserved for trial. Finally, Jones did not raise any particular claim of error with regard to the specific matters that Judge Kingsley had previously heard and decided. Thus, on this record, we cannot independently conclude that any part of her ruling was actually included within the "proceeding" on appeal, thereby mandating her disqualification from the appellate panel under section 170.1(b).[7]

Though the decision below stopped there, that is not the end of the disqualification analysis as applicable to superior court judges sitting on appellate division panels. Even though Judge Kingsley's disqualification may not have been required under section 170.1(b) based on the narrow, statutory definition of "proceeding," on this record, disqualification was still required under subdivision (a)(6)(C) of the same section. Section 170.1, subdivision (a)(6), which applies to superior court judges whether sitting on the trial court or appellate division panels, provides in pertinent part that a judge shall be disqualified if "[f]or any reason (A) the judge believes his or her recusal would further the interests of justice, (B) the judge believes there is a substantial doubt as to his or her capacity to be impartial, or (C) *a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial.*" (Italics added.) Thus, even though a judge's disqualification from an appellate division panel is not compelled because the pretrial matter decided by that judge was a different proceeding from the one on appeal, other, more general provisions within section 170.1, which also apply in the appellate division context, may still compel disqualification.

We hold here under section 170.1, subdivision (a)(6)(C), that a person aware of the facts—Judge Kingsley's prior ruling in the case and the degree to which that ruling was actually implicated by, or referenced in, the arguments on appeal from the judgment—"might reasonably entertain a doubt that [she] would be able to be impartial," such that disqualification is required

---

[7] We so conclude despite our disagreement with the appellate division's decision that, on this record, the "proceedings" that were before Judge Kingsley were "unrelated" to the proceedings on appeal.

in this instance. This statutory language is broad enough to require the disqualification of a judge from an appellate panel reviewing a judgment where that same judge heard a pretrial matter involving a contested factual or legal issue related to the merits, or made a procedural determination that had a substantial effect on the ultimate outcome, or where the determination, though not directly appealable, is related to an issue on appeal from the final judgment. Disqualification under these circumstances is required under section 170.1, subdivision (a)(6)(C), even though the pretrial proceeding heard by the judge is not the one on appeal, and disqualification is thus not compelled under section 170.1(b).

Not only do we determine that the facts of this case squarely fit the language of section 170.1, subdivision (a)(6)(C), to compel disqualification of Judge Kingsley from the appellate division panel reviewing the judgment, we also conclude that any other result would threaten the apparent or perceived independence and objectivity of the reviewing court in limited-jurisdiction cases.[8] In this circumstance, where a judge decided a contested pretrial matter that involved an issue related to, though not the same as, the one on appeal, it would be difficult, if not impossible, to avoid the appearance of impropriety if that judge were to participate in the appellate review. This conclusion holds true even if, as here, the particular judge involved states that she maintains the ability to decide the appeal fairly and there are no specific allegations against her of bias or prejudice.

While we do conclude that the existing statutory scheme compels disqualification of a judge in these particular circumstances, we also believe the Legislature might consider amendments to the judicial disqualification statutes that are specific to the predicament of post-unification superior court appellate division panels. As we have outlined above, the promotion of objectivity and independence in appellate division assignments is reflected in the constitutional and statutory provisions and rules of court that were enacted or amended to create and address the superior court appellate division. The applicable judicial disqualification statutes should likewise promote this goal, and they should include more specific provisions to account for the dual roles in which superior court judges, especially in smaller counties, may find themselves when they seek to discharge their duties while on simultaneous assignments to both the trial court and the appellate division.

---

[8] We add in passing that due to section 170.7, parties appearing before an appellate division panel that includes a judge who heard a prior contested pretrial matter do not have the benefit of a challenge to that judge under section 170.6. Section 170.7 provides that "[s]ection 170.6 does not apply to a judge designated or assigned to serve on the appellate division of a superior court in the judge's capacity as a judge of that division."

## Disposition

The decision of the superior court appellate division is reversed and the matter is remanded to that division for complete review and decision by an appellate panel that does not include Judge Kingsley.[9]

Rushing, P. J., and Premo, J., concurred.

---

[9] We note that even though this appeal is from an unlawful detainer judgment, Jones does not seek to regain possession of the premises. His purpose in appealing is "to set aside the judgment and award of attorney's fees and costs." He accordingly frames the issues on appeal as "deal[ing] solely with the judgment granting attorney's fees to [Housing] pursuant to a void contract." Thus, despite the purpose and expedited nature of unlawful detainer proceedings, the issues on appeal as framed by Jones have not been rendered moot by the passage of time.