Filed 9/15/15

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

AP-COLTON LLC,

     Plaintiff and Respondent,

  v.

CHARLES OHAERI et al.,

     Defendants and Appellants.

E059505

(Super.Ct.No. UDDS1200580)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Bryan Foster, Judge.  Conditionally affirmed and conditionally reversed and remanded with directions.

Law Offices of Akudinobi & Ikonte, Emmanuel C. Akudinobi, and Chijioke O. Ikonte for Defendants and Appellants.

Barry L. Cohen & Associates, Barry L. Cohen, and Ryan T. Koczara for Plaintiff and Respondent.

---

[*]     Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I and II.

1

Defendants Charles and Stella Ohaeri (Ohaeris) leased space for a thrift store in a shopping center owned by plaintiff AP-Colton LLC (AP-Colton). The thrift store was not a success, and the Ohaeris stopped paying rent. According to the Ohaeris, AP-Colton had fraudulently induced them to enter into the lease by stating that a church was going to move into the space next to theirs, but a competing store moved in instead.

AP-Colton originally filed the case as a limited civil action, in which damages are limited to $25,000. The Ohaeris filed a cross-complaint seeking more than $25,000, but they did not pay the $140 fee required to reclassify the case as an unlimited civil action. Thereafter, AP-Colton filed an amended complaint seeking more than $25,000; as the Ohaeris should already have paid the reclassification fee, AP-Colton did not pay it. After a bench trial, the trial court rejected the Ohaeris' fraud claims and awarded AP-Colton $126,437.25.

The Ohaeris now contend, among other things, that the case remained a limited civil action, and thus, the trial court erred by awarding damages of more than $25,000. We do agree that the case should have remained a limited civil action. The Ohaeris, however, took the position below that the case had become an unlimited civil action, and the trial court accepted this position by awarding AP-Colton damages in excess of $25,000; we will hold that, as a result, the Ohaeris are judicially estopped to deny that the case was an unlimited civil action. Accordingly, on condition that it pays the $140 reclassification fee, AP-Colton can recover the full award.

2

# I

## THE SUFFICIENCY OF THE EVIDENCE TO SUPPORT

## THE JUDGMENT AGAINST THE OHAERIS ON THEIR FRAUD CLAIM

The Ohaeris contend the judgment against them on their fraud claim is not supported by substantial evidence.

A.     *Additional Factual Background*.

The following facts are taken from the evidence introduced at trial.

AP-Colton owns a shopping center in Colton.  The Ohaeris wanted to open up a thrift store in the center that would sell new and used merchandise.

One of the stores already in the center was a Big Lots.  An AP-Colton representative told the Ohaeris that they could not use the word "thrift" in the name of their store because it might interfere with Big Lots.  As a result, according to the Ohaeris, they concluded that AP-Colton had "some internal policy . . . not to rent to similar competitors . . . ."

There was one particular space that the Ohaeris were interested in.  Next to it, there was a "big vacant space."  The vacant space had been leased to Rite Aid Corporation, which had moved out but still had the right to sublease it.

The Ohaeris asked Donald Pulliam, AP-Colton's leasing agent at the time, about the vacant space.  Pulliam said, "[A] church just rented it."

In April 2010, the Ohaeris leased their space from AP-Colton.  The lease did not expressly provide that AP-Colton would not lease to competing businesses.

Ultimately, Rite Aid did not actually sublease the vacant space to a church, because an adjacent landowner objected that the shopping center was limited to retail uses. Instead, about three weeks after the Ohaeris signed the lease, Rite Aid subleased the vacant space to Just Bargains, a 99-cents-type store.

Just Bargains sold some of the same items that the Ohaeris did, but for less. The Ohaeris' sales dropped off. In August 2011, they stopped paying rent. In May 2012, they surrendered possession.

Elizabeth Velasco, who had succeeded Pulliam as AP-Colton's leasing agent, testified that AP-Colton never "makes any guarantees" about who will lease space in the future. She explained, "[W]e don't have any guarantee on what leases we're going to get signed. Even if we do get leases signed, people default all the time."

B.    *Discussion*.

Because the parties did not make a timely request for a statement of decision (Code Civ. Proc., § 632),[1] "the doctrine of implied findings applies. 'The doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment. [Citation.] The doctrine is a natural and logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of

---

[1]    The Ohaeris did file a request for a statement of decision one day after the trial ended, but the trial court ruled that it was untimely. The Ohaeris do not claim that this was error. It was not. (See Code Civ. Proc., § 632; Cal. Rules of Court, rule 3.1590(n).)

correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error. [Citations.]' [Citation.]" (*County of Orange v. Barratt American, Inc.* (2007) 150 Cal.App.4th 420, 438-439.)

"'Where findings of fact are challenged on a civil appeal, we are bound by the "elementary, but often overlooked principle of law, that . . . the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the findings below. [Citation.] We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor . . . .' [Citation.]" (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1053.)

In addition, because the Ohaeris had the burden of proving fraud, "' . . . the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." [Citation.]' [Citation.]" (*Valero v. Board of Retirement of Tulare County Employees' Assn.* (2012) 205 Cal.App.4th 960, 966.)

"The elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. [Citation.]" (*Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 990.)

"'[F]alse representations made recklessly and without regard for their truth in order to induce action by another are the equivalent of misrepresentations knowingly and intentionally uttered.' [Citation.]" (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 974.)

Here, the trial court could reject the fraud claim because the Ohaeris failed to prove falsity. The supposed false statement was that a church had rented (or was interested in renting) the vacant space. For all the record shows, however, that statement was true when made. The deal fell through later because an adjacent landowner objected that such a sublease would violate restrictions on the use of the shopping center. For the same reason, the Ohaeris failed to prove that AP-Colton knew that the statement was false or was reckless as to falsity.

The Ohaeris argue that, by asking them not to use the word "thrift" in the name of their store, AP-Colton represented that it had an "interest in protecting [its] renters['] business from competition." The trial court, however, could reasonably find that, to the extent that this was a representation at all, it was a representation that AP-Colton had a policy against stores in the center having competing *names*. After all, AP-Colton did not try to limit the nature of Ohaeris' business, only its name. Moreover, to the extent that the Ohaeris relied on this as a representation that AP-Colton had a policy of not allowing competing stores, the trial court could reasonably find that their reliance was not justifiable.

6

Accordingly, the trial court did not err by finding against the Ohaeris on their fraud claim.

## II

## THE DENIAL OF A CONTINUANCE

The Ohaeris contend that the trial court erred by denying their request for a continuance at the beginning of trial.

A.      *Additional Factual and Procedural Background*.

The Ohaeris answered the complaint in propria persona.  They remained in propria persona until after the trial.

In November 2012, the case was set for trial on March 18, 2013.

On Thursday, March 14, 2013, at a trial readiness calendar hearing, the Ohaeris declared that they were ready for trial.

On Monday, March 18, 2013, the case was called for trial.  AP-Colton proposed to call three witnesses.  One of these witnesses was "stuck in New York," but he was expected to be available the following day.

Mr. Ohaeri requested a continuance.  He indicated that he had received AP-Colton's trial brief on Friday and found it "overwhelming."  He claimed that he had found an attorney who would take the case if he could get a continuance.  He also wanted an attorney's help in negotiating a settlement.  He indicated that he wanted to call as a

witness "the very person . . . we dealt with,"[2] adding, "Nobody is bringing him in.  So we intend to bring him."  He also stated, "I'm not really ready to try this case."

The trial court denied the requested continuance.[3]  It noted (and Mr. Ohaeri confirmed) that he was asking for a continuance of "several weeks" rather than days.  It also noted that AP-Colton had made travel arrangements for the witness who was coming from New York.

After hearing testimony, the trial court gave a tentative ruling awarding AP-Colton $121,357.25.  Based on this tentative ruling, AP-Colton chose to rest without calling the witness who was coming from New York.

B.     *Discussion.*

"To ensure the prompt disposition of civil cases, the dates assigned for a trial are firm.  All parties and their counsel must regard the date set for trial as certain."  (Cal. Rules of Court, rule 3.1332(a).)

"A party seeking a continuance of the date set for trial . . . must make the request for a continuance by a noticed motion or an ex parte application . . . , with supporting declarations.  The party must make the motion or application as soon as reasonably

---

**2**     According to the testimony at trial, this was Dallas Pulliam, AP-Colton's former leasing manager.

**3**     According to the clerk's minute order, the trial court denied a motion for a continuance brought by both of the Ohaeris.  The reporter's transcript, however, makes it clear that only Mr. Ohaeri requested a continuance.

practical once the necessity for the continuance is discovered." (Cal. Rules of Court, rule 3.1332(b).)

"Reviewing courts must uphold a trial court's choice not to grant a continuance unless the court has abused its discretion in so doing. [Citation.]" (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 823.) "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.' [Citation.]" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)

Here, Mr. Ohaeri did not file either a noticed motion or an ex parte application for a continuance. He did not submit any declarations in support of his request. The trial court could properly deny a continuance for this reason alone.

Separately and alternatively, the trial court could also deny a continuance on the ground that the request was not made as soon as reasonably practical. The Ohaeris had been in propria persona all along. Even though they had only just received AP-Colton's trial brief, they had drafted and filed a trial brief of their own, so they had had both an incentive and an opportunity to think through all the issues in the case.

Mr. Ohaeri claimed that he wanted to call Dallas Pulliam; however, Pulliam was not on his witness list. In any event, because he had not subpoenaed Pulliam, he could not complain. (See Cal. Rules of Court, rule 3.1332(c)(6) ["A party's *excused* inability to obtain essential testimony . . . *despite diligent efforts*" can constitute good cause for

continuance, italics added].) Likewise, any settlement negotiations should have been initiated long before trial.

In addition to Mr. Ohaeri's failure to show good cause, several factors militated against granting the request. The trial date was as close as it could possibly get. (See Cal. Rules of Court, rule 3.1332(d)(1) [trial court can consider the proximity of the trial date].) The continuance sought was relatively long. (See Cal. Rules of Court, rule 3.1332(d)(3) [trial court can consider the length of the continuance].) And finally, AP-Colton and its witnesses would have been inconvenienced. (See Cal. Rules of Court, rule 3.1332(d)(5) [trial court can consider prejudice to parties or witnesses].)

Mr. Ohaeri argues that AP-Colton would not have been prejudiced by a continuance, because its out-of-state witness ended up not testifying. At the time the trial court ruled on the request for a continuance, however, there was no way of knowing that that would happen. If the trial court had granted the continuance, AP-Colton would have had to make new arrangements for the attendance of the witness coming from New York, as well as all of its other witnesses.

Mr. Ohaeri also claims that he was prejudiced by the denial of a continuance. The trial court, however, could properly view any such prejudice as caused by his own failure to seek an attorney within a reasonable time before trial.

Finally, Mr. Ohaeri asserts that he had a "constitutional right to have a counsel try his case." He cites no authority for the existence of such a right. "On the contrary, the general rule is that there is no due process right to counsel in civil cases. [Citation.]"

10

(*Walker v. State Bar* (1989) 49 Cal.3d 1107, 1116.)  In any event, even a constitutional right can be waived or forfeited.  Thus, even assuming that he had a constitutional right to appear through retained counsel, he forfeited it by choosing to proceed in propria persona until the very last minute before trial.

We therefore conclude that the trial court did not err by denying a continuance.

III

THE NATURE OF THE CASE AS A LIMITED OR UNLIMITED CIVIL ACTION

The Ohaeris contend that the trial court erred by awarding more than $25,000 in damages, because the case was filed as a limited civil action and never reclassified.

A.    *Additional Factual and Procedural Background*.

In February 2012, AP-Colton commenced this action by filing an unlawful detainer complaint.  The complaint sought damages of less than $25,000 and stated, "ACTION IS A LIMITED CIVIL CASE."  In May 2012, the Ohaeris surrendered possession of the premises.  As a result, the action was converted to an ordinary civil action.

In June 2012, the Ohaeris filed a cross-complaint.  The cross-complaint sought damages of $1,000,000 and stated, "ACTION IS AN UNLIMITED CIVIL CASE."  On the same date, the Ohaeris filed applications for fee waivers, but the trial court denied them.  This meant that the Ohaeris had 10 days in which to pay the reclassification fee. (Gov. Code, § 68634, subd. (g).)  Nevertheless, they did not pay the reclassification fee within 10 days—or ever.

11

In July 2012, the Ohaeris filed a Case Management Statement on which they checked the box for "UNLIMITED CASE."

Later in July 2012, AP-Colton filed an amended complaint. The amended complaint sought damages of $236,390.85 and stated, "ACTION IS AN UNLIMITED CIVIL CASE." AP-Colton did not pay a reclassification fee.[4]

On March 18, 2013, the trial court held a bench trial. On June 21, 2013, it entered judgment awarding AP-Colton $121,357.25 against the Ohaeris, plus attorney fees and costs.

B.    *Discussion*.

Subject to exceptions not relevant here, a civil case in which the damages claimed are $25,000 or less is a limited civil action. (Code Civ. Proc., § 86, subd. (a)(1).) This includes an unlawful detainer proceeding in which the damages claimed are $25,000 or less. (Code Civ. Proc., § 86, subd. (a)(4).) In a limited civil action, the judgment cannot exceed $25,000. (Code Civ. Proc., § 580, subd. (b)(1).)

"For reclassification of a case from a limited civil case to an unlimited civil case, a fee shall be charged . . . ." (Code Civ. Proc., § 403.060, subd. (a).) "The fee for

---

**4**    In a declaration in opposition to the Ohaeris' subsequent motion for new trial, an attorney for AP-Colton testified, "I reasonably assumed that [the Ohaeris] paid the reclassification fee at the time they filed their Cross-Complaint, or else that the fee was waived due to one of [the Ohaeris'] several fee waiver requests."

reclassification of a case from a limited civil case to an unlimited civil case . . . is one hundred forty dollars ($140)." (Gov. Code, § 70619.)

"If a plaintiff . . . files an amended complaint . . . that changes the jurisdictional classification from limited to unlimited, the party at the time of filing the pleading shall pay the reclassification fee . . . , and the clerk shall promptly reclassify the case." (Code Civ. Proc., § 403.020, subd. (a).)

Similarly, "[i]f a party in a limited civil case files a cross-complaint that causes the action or proceeding to exceed the maximum amount in controversy for a limited civil case . . . , the caption of the cross-complaint shall state that the action or proceeding is a limited civil case to be reclassified by cross-complaint, or words to that effect. The party at the time of filing the cross-complaint shall pay the reclassification fees . . . , and the clerk shall promptly reclassify the case." (Code Civ. Proc., § 403.030.)

"If a reclassification fee is required and is not paid at the time an amended complaint or . . . a cross-complaint . . . is filed . . . , . . . the clerk shall not reclassify the case and the case shall remain and proceed as a limited civil case." (Code Civ. Proc., § 403.060, subd. (b).)

Here, neither side ever paid a reclassification fee. Thus, the Ohaeris argue that, under Code of Civil Procedure section 403.060, subdivision (b), the case had to "remain and proceed as a limited civil case." They assert that "[t]he jurisdictional limit of the limited civil case is analogous to subject matter jurisdiction which cannot be waived . . . ."

13

The classification of a case as a limited or unlimited civil action does not go to subject matter jurisdiction. "'Prior to 1998, California counties had two major designations of civil courts—the superior courts and the municipal courts, and each court system had separate subject matter jurisdiction . . . . [¶] In 1998, the California Constitution was amended to permit unification of the municipal and superior courts in each county into a single superior court system having original jurisdiction over all matters formerly designated as superior court and municipal court actions. [Citation.] After unification, the municipal courts ceased to exist. [Citations.] Now civil cases formerly within the jurisdiction of the municipal courts are classified as "limited" civil cases, while matters formerly within the jurisdiction of the superior [courts] are classified as "unlimited" civil action[s]. [Citations.]' [Citation.]" (*Housing Authority of Monterey County v. Jones* (2005) 130 Cal.App.4th 1029, 1037-1038.)

While Code of Civil Procedure section 86 is entitled "Jurisdiction," that is a relic of the era before trial court unification. This title was not part of the amended statute as enacted by the Legislature. (See Stats. 1998, ch. 931, § 29, pp. 6410-6412.) Thus, it is not relevant to our construction of the statute. (*Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1096, fn. 2 ["a provision's title 'is never allowed to enlarge or control the language in the body of the [provision].' [Citations.]"].)

*Pajaro Valley Water Management Agency v. McGrath* (2005) 128 Cal.App.4th 1093 is not squarely on point, but it is instructive. There, the issue was whether the judgment in a certain prior action was collateral estoppel. In that prior action, a local

14

agency had sued a landowner (McGrath) in municipal court for unpaid "groundwater augmentation charges." (*Id*. at p. 1097.) McGrath argued that the charges were illegal. (*Id*. at pp. 1097-1099.) The municipal court lacked jurisdiction to adjudicate the legality of a tax or assessment. (*Id*. at p. 1101.) Before judgment, the municipal courts were unified with the superior courts, and the case automatically became a limited civil action. (*Id*. at p. 1098.) However, in a limited civil action, the trial court is not supposed to adjudicate the legality of a tax or assessment. (*Id*. at p. 1102.) Ultimately, the court entered judgment in favor of the local agency and thus implicitly ruled that the charges were legal. (*Id*. at p. 1098.)

McGrath argued that the judgment in the prior action was void and therefore not collateral estoppel. (*Pajaro Valley Water Management Agency v. McGrath*, *supra*, 128 Cal.App.4th at p. 1099.) The appellate court rejected this argument: "After unification . . . , the case was no longer pending before the municipal court, a court of limited jurisdiction, but before the superior court, a court of general jurisdiction, and indeed the only court in which it could now be tried. [Citations.] The court therefore did not lack the fundamental power to adjudicate the matter. [Citation.]

"It is true that after the matter was converted to a superior court action, McGrath's challenge to the validity of the charge continued to have some potential effect. . . . [W]hen McGrath's answer tendered issues concerning the validity of the charges, it had the effect of potentially changing the matter from a limited case to an unlimited case. That change, however, would not affect the fundamental jurisdiction of the court; it

would only relieve the parties of certain limitations affecting the *manner* in which the case could be adjudicated. [Citation.]" (*Pajaro Valley Water Management Agency v. McGrath*, *supra*, 128 Cal.App.4th at pp. 1102-1103.)

In this case, because subject matter jurisdiction is not involved, the Ohaeris could be judicially estopped to dispute that the case was an unlimited civil action. "Subject matter jurisdiction . . . cannot be conferred by waiver, consent, or estoppel. [Citation.]" (*Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 307, fn. 9.) By contrast, "when a court has subject matter jurisdiction over an action, 'a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction.' [Citation.]" (*Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 584.)

"'"'Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. [Citations.] The doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies. [Citation.] Application of the doctrine is discretionary.'" [Citation.] The doctrine applies when "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud,

16

or mistake." [Citations.]' [Citations.]" (*People v. Castillo* (2010) 49 Cal.4th 145, 155, italics omitted.)

All of the requirements of judicial estoppel were satisfied here. In the trial court, the Ohaeris took the position that the case was an unlimited civil action, which would have allowed them to *recover* damages in excess of $25,000. They were successful in asserting that position (although not successful in actually recovering damages), in that the trial court awarded AP-Colton damages in excess of $25,000. Now, to avoid having to *pay* damages in excess of $25,000, they have taken the exact opposite position. Finally, the Ohaeris have never claimed that they acted out of ignorance, fraud, or mistake.

We also note that the Ohaeris' notice of appeal stated, "UNLIMITED CIVIL CASE." According to the Ohaeris, the superior court clerk nevertheless routed the appeal to the appellate department of the superior court; they then affirmatively caused it to be transferred to this court on the theory that the judgment was in excess of $25,000. An appeal in a limited civil case must be taken to the appellate department, not to this court. (Code Civ. Proc., §§ 904.1, subd. (a), 904.2.) We see no reason why this would not apply to an appeal contending that the amount of damages awarded was excessive. Thus, by appealing to this court, the Ohaeris have, once again, successfully taken an inconsistent position.

The Ohaeris argue that AP-Colton knew or should have known that they had not paid the reclassification fee. While that might be relevant to equitable estoppel, it is

17

irrelevant to judicial estoppel. "The doctrine of judicial estoppel is designed to protect the integrity of the legal system as a whole, and does not require a showing of detrimental reliance by a party. [Citation.]" (*People v. Castillo*, *supra*, 49 Cal.4th at p. 156.)

In any event, we disagree. We have found no statute or court rule that requires the clerk to notify the parties that the case has been reclassified. Quite the contrary, it is the party that causes a reclassification who is supposed to give notice. California Rules of Court, rule 2.111(11) provides: "If a case is reclassified by an amended complaint, cross-complaint, amended cross-complaint, or other pleading . . . , the caption must indicate that the action or proceeding is reclassified by this pleading. . . . The caption or title must state that the case is a limited civil case reclassified as an unlimited civil case, or an unlimited civil case reclassified as a limited civil case, or other words to that effect."

In this case, as already noted, the Ohaeris' cross-complaint stated, "ACTION IS AN UNLIMITED CIVIL CASE." Admittedly, this did not comply fully with the rule, because it did not state that the case had been reclassified. Nevertheless, it was substantial compliance; it gave the necessary notice, if only in "other words to that effect."[5]

The Ohaeris argue that AP-Colton had access to the register of actions, which would have shown that the reclassification fee had not been paid. A party has no duty to

---

[5]    This is particularly true because the Ohaeris were in propria persona at the time. AP-Colton could reasonably assume that the Ohaeris failed to comply with the notice requirements of California Rules of Court, rule 2.111 through mere ignorance.

18

keep checking the register of actions. Before the Internet, this was not reasonably feasible; and even since the Internet, no such duty has been imposed. Thus, AP-Colton could reasonably accept the Ohaeris' representation that, after they filed their cross-complaint, the case became an unlimited civil action.[6]

We are mindful that "[j]udicial estoppel is *an equitable doctrine*, and its application, even where all necessary elements are present, is discretionary. [Citations.]" (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 422-423.) We do not mean to allow parties to reclassify an action as an unlimited civil action collusively, simply by labeling it as such, without paying the necessary reclassification fee. The reclassification fee requirement was "established for a public reason," and thus it "cannot be contravened by a private agreement." (Civ. Code, § 3513.)

As a court of equity, to prevent collusion and to protect the public fiscal interest at stake, we conclude that the application of judicial estoppel in this case should be made conditional on AP-Colton's payment of the $140 reclassification fee. Subject to that condition, however, we hold that the trial court properly entered judgment in excess of $25,000.

---

**6** For this reason, it seems likely that, in addition to judicial estoppel, equitable estoppel would also apply. However, we need not decide this question.

19

## IV

## DISPOSITION

The judgment is affirmed, on the condition that AP-Colton pays the $140 reclassification fee within not more than 10 days after the issuance of our remittitur.  If AP-Colton fails to pay the reclassification fee in a timely manner, the judgment is reversed and the trial court is directed to enter a new judgment reducing the amount of the damages awarded to $25,000.  AP-Colton is awarded costs on appeal against the Ohaeris.

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ_____

P. J.

We concur:


HOLLENHORST_____

         J.


McKINSTER_____

         J.