Filed 6/27/23  Stark v. Liberty CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JAMES STARK et al., | |
| Plaintiffs and Appellants, | A166165 |
| v. | |
| MICHAEL LIBERTY et al., | (San Mateo County |
| Defendants and Respondents. | Super. Ct. No. 22CIV00587) |

All parties to this fee dispute between an attorney and his former clients agree that the dispute belongs in arbitration.  They just could not agree on the right arbitrator.  Plaintiffs James and Heidi Stark filed a petition to compel arbitration requesting that the court pick an arbitrator as required by California law.  (Code Civ. Proc., § 1281.6.)[1]  Based on his alleged interpretation of the submission by the Starks, defendant Michael Liberty filed a procedurally inappropriate cross-complaint.  Then, instead of moving to strike the cross-complaint on procedural grounds, the Starks filed an anti-

---

[1] Unless otherwise noted, further statutory references are to the Code of Civil Procedure.

SLAPP motion in response.[2]  Rather than consume judicial resources by hearing the unnecessary anti-SLAPP motion, the trial court simply picked an arbitrator and struck the procedurally inappropriate cross-complaint.  Since it had stricken the cross-complaint, the trial court also struck the anti-SLAPP motion.

The Starks appeal only the trial court's ruling on the anti-SLAPP motion.  They argue that the court was *required* to rule on the merits of their motion, grant it, and then order Liberty to pay their attorney fees and costs.

We disagree and affirm.  Section 1290.2 provides that a petition to compel arbitration "shall be heard in a summary way in the manner and upon the notice provided by law for the making and hearing of motions."  The trial court did its job here, which was to pick an arbitrator for the parties so that they could submit their dispute to arbitration.  It was not required to adjudicate the anti-SLAPP motion, which had no place in this summary proceeding.  The anti-SLAPP statute does not compel a different result.

## BACKGROUND

The Starks hired Liberty as an attorney, signing a fee agreement in March 2020, to pursue claims against their neighbors for the destruction or damage of trees on the Starks' property.  The agreement included a paragraph entitled "<u>MEDIATION AND ARBITRATION</u>."  It stated: "CLIENTS agree that any dispute arising out of this Agreement including claims of professional negligence and malpractice shall be submitted first to mediation; if the mediation is unsuccessful, the dispute shall then be submitted to binding arbitration.  The mediation and arbitration shall be

---

[2] Known as the anti-SLAPP statute, section 425.16 seeks to deter " 'strategic lawsuits against public participation,' " or " 'SLAPP suits.' " (*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 321.)

2

held in San Mateo County.  By agreeing to binding arbitration, the parties understand that they are waiving their constitutional right to a jury trial and other procedural rights of citizens of California and the United States, except as to any and all causes of action for legal malpractice, which remains in place."

The Starks discharged Liberty in October 2020 with a disputed unpaid fee balance of $31,557.  They indicated that their new attorney would "work with [Liberty] to set up a mediation (or if necessary binding arbitration) to resolve our attorney fee issues."  Liberty responded that both parties should select potential mediators.  Liberty identified an attorney mediator.  The Starks' new attorney responded that they wished to use a retired judge who would "have more analytic ability with subject matter expertise."  Liberty felt that using a retired judge would be "prohibitively expensive" given the amount in dispute, and the Starks' new attorney (who had served as a pro tem judge) had not responded to a request that he detail his "experience or friendship with each of these judges."

Over a year later, in January 2022, Liberty served the Starks with a "Notice of Client's Right to Fee Arbitration" (Notice), proposing the use of an arbitrator through the San Mateo Bar Association program.  The Starks rejected using the Bar panel and asked Liberty to "please choose a retired Judge from the San Mateo County ADR panel so we can get started with the process.  No arbitrator other than a retired Judge is acceptable to Jim [Stark] and he will share the arbitrator's fees equally with you."

In February 2022, the Starks filed a petition to compel arbitration in San Mateo County Superior Court.  According to the Starks, they filed the petition because they interpreted service of the Notice, which allowed Liberty to sue them after 30 days of receipt, as a "proverbial shot across the bow that

3

a lawsuit from Mr. Liberty was imminent."

The petition explained that there was no mechanism for arbitrator selection in Liberty's fee agreement. It requested that, pursuant to section 1281.6, the trial court nominate a list of five retired judges as potential arbitrators. If the parties could still not agree, the Starks would further petition the court for an appointment. The petition included a list of nine retired judges who were "acceptable" to the Starks.

Liberty filed a response to the petition. He indicated that he did not oppose proceeding to arbitration, but argued that the Starks' "insistence upon using a retired Superior Court Judge as arbitrator is unworkable, impractical and not contemplated by the subject fee agreement," and "would be severely prejudicial" to Liberty. At the July 2022 case management conference, Liberty requested that an arbitrator be chosen by the court and that all future motions be heard in the arbitration. The trial court directed Liberty to provide it with his list of proposed arbitrators. Liberty proposed three potential attorney arbitrators.

In addition to his response to the petition, Liberty also filed a cross-complaint, purporting to assert seven causes of action against the Starks. The Starks' petition had included an alternative request that, if the court denied their petition, they be allowed leave to "amend" the petition to "transform same into to [*sic*] causes of action for an accounting and breach of contract related seeking a whole or partial refund of attorney fees and costs paid by them to Liberty." According to Liberty, the petition was "styled as a complaint," and he said he filed his "compulsory" cross-complaint "in order to preserve his rights."

The Starks answered the cross-complaint. They also filed an anti-SLAPP motion seeking to strike three of the causes of action in the cross-

4

complaint. Liberty's pleading included claims of fraud, negligent misrepresentation, and "money had and received," alleging that the Starks had said they would pay Liberty but really never intended to compensate him and alleging the Starks had withheld details of their settlement of the tree case in which Liberty had represented them. The Starks argued that these three cross-claims arose from "protected activities" under the anti-SLAPP statute—privileged communications between the Starks and Liberty, and in connection with the litigation against their neighbors. The Starks sought attorney fees and costs of $25,360.97 under section 425.16, subdivision (c) (section 425.16(c)). The Starks also amended their petition to compel arbitration to include (1) the disputes alleged in Liberty's cross-complaint and (2) the Starks' anti-SLAPP motion.

On August 26, 2022, the trial court issued its order appointing the Honorable Bonnie Sabraw (Retired) as the arbitrator in this matter. On September 9, 2022, the trial court issued an order striking the cross-complaint, the answer to the cross-complaint, and the anti-SLAPP motion, as procedurally improper. The trial court stated: "This proceeding was initiated by a petition to compel arbitration, as provided for by CCP § 1290. There is nothing in CCP § 1290 et seq. indicating that the filing of a cross-complaint is permitted in a proceeding to compel arbitration under the statute." It explained that the Starks offered "no authority supporting the filing of a cross-complaint or special motion to strike in a proceeding initiated by a petition to compel arbitration," and that the improperly filed cross-complaint did not " 'trigger[] procedural and substantive rights in favor of the Starks,' " as they contended.

The Starks appeal.

# DISCUSSION

Despite there being no disagreement that the Starks' fee dispute with Liberty be sent to arbitration, the Starks insist that the trial court had no choice but to hear their anti-SLAPP motion and then rule on the associated request for attorney fees. As this issue "presents a pure question of law and does not involve the resolution of disputed facts, we apply the de novo standard of review." (*Stratton v. Beck* (2017) 9 Cal.App.5th 483, 491; see also *Pfeiffer Venice Properties v. Bernard* (2022) 101 Cal.App.4th 211, 217 [exercising independent legal judgment on whether defendants were entitled to a ruling on the merits of their anti-SLAPP motion as a predicate for fees motion].)

The California Arbitration Act (CAA) (§ 1280 et seq.) sets forth "a comprehensive statutory scheme regulating private arbitration in this state." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) Under the CAA, a party may petition the court to compel other parties to arbitrate a dispute that is covered by an agreement to arbitrate. (§ 1281.2.) The CAA also provides that a party may petition the court to appoint an arbitrator if the agreement does not provide a method for doing so and the parties cannot agree on any method. (§ 1281.6.) Section 1281.6 states, in relevant part: "When a petition is made to the court to appoint a neutral arbitrator, the court shall nominate five persons from lists of persons supplied jointly by the parties to the arbitration . . . . The parties to the agreement who seek arbitration and against whom arbitration is sought may within five days of receipt of notice of the nominees from the court jointly select the arbitrator whether or not the arbitrator is among the nominees. [¶] If the parties fail to select an arbitrator within the five-day period, the court shall appoint the arbitrator from the nominees."

As the trial court explained, the proceeding here was initiated by the Starks' petition to compel arbitration. Neither side opposed arbitration; they just had an impasse picking the arbitrator. At the case management conference, Liberty asked the trial court to appoint an arbitrator. Both parties submitted a list of candidates.

We see no basis to conclude that the trial court was required to decide the Starks' anti-SLAPP motion and related fee request. The *only* issue before the trial court was the appointment of an arbitrator under section 1281.6. Trial courts play a "fairly limited" role when the parties have submitted matters to arbitration. (*Titan/Value Equities Group, Inc. v. Superior Court* (1994) 29 Cal.App.4th 482, 487.) Section 1290.2 provides, in relevant part, that "A petition under this title shall be heard in a summary way in the manner and upon the notice provided by law for the making and hearing of motions." The summary nature of the proceeding "is designed to further the use of private arbitration as a means of resolving disputes more quickly and less expensively than through litigation." (*Rosenthal v. Great Western Fin. Securities Group* (1996) 14 Cal.4th 394, 409.) Moreover, a court's jurisdiction after appointing an arbitrator under section 1281.6 has even been labeled "vestigial." (*Titan/Value Equities Group, Inc.*, at p. 487, quoting *Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1796.) The Starks' anti-SLAPP motion (and Liberty's cross-complaint) had no place in this summary proceeding. The trial court played its role by resolving the issue raised by the petition: the parties' impasse on selecting an arbitrator.

We are not persuaded that, solely because Liberty filed a procedurally improper cross-complaint, the law requires the trial court to expand its role. " 'Private arbitration is a matter of agreement between the parties and is governed by contract law. [Citation.] Arbitration agreements are to be

7

construed like other contracts to give effect to the intention of the parties.' " (*In re Tobacco Cases I* (2004) 124 Cal.App.4th 1095, 1104.) "Typically, those who enter into arbitration agreements expect that their dispute will be resolved without necessity for any contact with the courts." (*Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 402, fn. 5.)

Such would have been the case here, if only the parties had been able to agree on the arbitrator. Liberty and the Starks had agreed to arbitrate "any dispute arising out of " the attorney-client fee agreement. The Starks took the position that the disputes alleged in Liberty's cross-complaint and their own anti-SLAPP motion should be arbitrated under the agreement, when they amended their petition to compel arbitration to include these matters. Liberty also appears to have taken the same position at the hearing in the trial court, stating: "[T]here is no anti-SLAPP motion that could be brought in a motion to compel arbitration proceeding. Everything needs to go, Your Honor, to the arbitrator."

None of the Starks' arguments compel a contrary result. First, they point to the express mandate of section 425.16, subdivision (a), which notes that the anti-SLAPP statute is "construed broadly." But, the Starks present no authority that the anti-SLAPP statute should be read in a manner that contravenes the extremely limited role of the trial court in resolving the issue raised in the summary proceeding below. Through the "detailed statutory scheme" of the CAA, the California Legislature "has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' " (*Moncharsh v. Heily & Blase*, *supra*, 3 Cal.4th at p. 9; see also *Westmoreland v. Kindercare Education LLC* (2023) 90 Cal.App.5th 967, 978, discussing *Lamps Plus v. Varela* (2019) 139 S.Ct. 1407, 1415 [noting " ' "the foundational [Federal Arbitration Act] principle that

arbitration is a matter of consent" ' "].)  As the California Supreme Court explained over a century ago:  "The policy of the law in recognizing arbitration agreements and in providing by statute for their enforcement is to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing." (*Utah Const. Co. v. Western P.R. Co.* (1916) 174 Cal. 156, 159.)

Second, the Starks rely on cases entirely outside the context of arbitration.  It is well-settled that, in a typical legal action, a fee request under section 425.16(c) can be considered and granted even after disposition of the underlying pleading.  (*Liu v. Moore* (1999) 69 Cal.App.4th 745, 751, 755 (*Liu*) [cross-defendant entitled to have merits of anti-SLAPP motion heard after voluntary dismissal of cross-complaint, as predicate to section 425.16(c) fee award]; *Pfeiffer Venice Properties v. Bernard, supra,* 101 Cal.App.4th at pp. 218–219 [applying *Liu* to trial court dismissal of complaint]; *White v. Lieberman* (2002) 103 Cal.App.4th 210, 220–221 [anti-SLAPP motion not moot after demurrer sustained without leave to amend, and matter remanded to consider section 425.16(c) attorney fees]; *Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1059 [no error where, after party amended cross-complaint, trial court concluded anti-SLAPP motion was meritorious and cross-defendant was entitled to award of attorney fees and costs]; *Law Offices of Andrew L. Ellis v. Yang* (2009) 178 Cal.App.4th 869, 881 [trial court lacked jurisdiction to rule on anti-SLAPP motion after voluntary dismissal of complaint, but could entertain subsequent motion for attorney fees and costs]; *Catlin Ins. Co., Inc. v. Danko Meredith Law Firm, Inc.* (2022) 73 Cal.App.5th 764, 775 [same].)

The courts hear anti-SLAPP fee requests even after a voluntary dismissal, as in the cases cited by the Starks, because otherwise the victims

of meritless, retaliatory SLAPP lawsuits have no "viable alternative" to obtaining the relief afforded by section 425.16(c). (*Liu*, *supra*, 69 Cal.App.4th at pp. 750–751.) A typical defendant cannot, for example, request attorney fees through a section 128.7 motion[3] if the plaintiff dismisses its complaint within 30 days of being served with the anti-SLAPP motion, "since the dismissal has the effect of withdrawing the challenged complaint." (*Liu*, at p. 751.) Even if it was a viable alternative, a request for sanctions under section 128.7 would not be an equivalent one: section 128.7 gives the court *discretion* to award reasonable fees to the prevailing party, whereas section 425.16(c) *requires* the court to do so. (*Liu*, at p. 751.)

The same rationale, however, does not apply to a summary proceeding like this one, where the parties agreed to arbitrate their fee dispute but asked the trial court to select an arbitrator. At oral argument on appeal, the Starks speculated that their anti-SLAPP motion might remain unresolved if the arbitration is limited in scope. We need not and do not address such hypotheticals, given that the Starks have appealed only the anti-SLAPP ruling and neither party presented any dispute concerning the scope of arbitration in briefing or oral argument to the trial court. (See *Transcontinental Ins. Co. v. Insurance Co. of the State of Pennsylvania* (2007) 148 Cal.App.4th 1296, 1309 ["issues not raised in the trial court will not be considered on appeal"].)

In sum, the Starks initiated this proceeding through a petition to compel arbitration. The sole issue before the trial court was appointment of an arbitrator under section 1281.6. Under these circumstances, the trial

---

[3] Section 128.7 provides, in relevant part, that a party may move for sanctions for a frivolous pleading and "the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." (§128.7, subd. (c)(1).)

court was not required to rule on the Starks' anti-SLAPP motion or associated fee request.[4]

## DISPOSITION

The September 9, 2022 order striking the Starks' section 425.16 motion is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

---

[4] Given this conclusion, we deny the Starks' petition for writ of mandate, and need not address the parties' additional arguments regarding the merits of the Starks' anti-SLAPP motion and objections to evidence submitted in opposition to the motion. We also deny the Starks' request for remand to rule on their request for attorney fees and costs under section 425.16(c).

11

_____
Markman, J.*


We concur:


_____
Richman, Acting P.J.


_____
Miller, J.


*Stark et al. v. Liberty et al.* (A166165)


        * Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


12