Filed 2/14/17 Certified for publication (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THOMAS E. BECK, | B270826 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS152046) |
| v. | |
| ANTHONY STRATTON, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of
Los Angeles County, Mark A. Borenstein, Judge.  Affirmed.
Thomas E. Beck in pro. per.
David Maxim Balter for Defendant and Respondent.

The Labor Commissioner awarded respondent Anthony Stratton approximately $6,000 in unpaid wages and penalties against his former employer, appellant Thomas Beck. Beck unsuccessfully appealed the award to the superior court under Labor Code section 98.2, subdivision (a). Stratton then moved for attorney's fees under Labor Code section 98.2, subdivision (c) 58 days later. Beck opposed the motion as untimely, because Stratton filed it after the 30-day deadline applicable to fee motions in limited civil cases. Stratton maintained the motion was timely because it was filed within the 60-day deadline applicable to fee motions in unlimited civil cases. The superior court agreed with Stratton and awarded him $31,365 in attorney's fees.

On appeal, Beck contends that the motion for attorney's fees was untimely because the case was a limited civil case. He further contends that, even if the motion was timely, the fee award was unreasonably high and unsupported by competent billing evidence. We disagree with both arguments and affirm the judgment of the superior court.

## FACTUAL AND PROCEDURAL BACKGROUND

Beck hired Stratton to work for him in September 2013. Stratton quit the job two months later, in November 2013, while Beck was out of town. Stratton left a "somewhat confusing" note on his desk, in which he claimed he was owed a total of $1,957.95 in wages, overtime, and other compensation. Of that, $1,075 was for 43 hours of "straight time" at Stratton's hourly wage of $25.

Beck promptly directed his payroll service, ADP, to pay Stratton the $1,075 in ordinary wages. For reasons "no one at trial could explain," ADP paid Stratton only $771.45 instead of the requested $1,075. Beck later paid Stratton the other moneys

2

he had requested, but did not pay the $303.55 difference between the $1,075 in ordinary wages Stratton was owed and the $771.45 ADP remitted.

Stratton filed a claim for unpaid wages in the amount of $303.50 with the Division of Labor Standards Enforcement, the state agency empowered to enforce California's labor laws.[1] (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 581.) After conducting an administrative hearing, the Labor Commissioner awarded Stratton the $303.50 he requested, plus an additional $5,757.46 in liquidated damages, interest, and statutory penalties, for a total award of $6,060.96.

Beck timely sought review of the Labor Commissioner's order by filing an appeal in the Los Angeles County superior court. (See Lab. Code, § 98.2, subd. (a).)[2] He completed and filed the "Notice of Appeal" form designed by the Division of Labor Standards Enforcement for such cases,[3] to which he attached a copy of the $6,060.96 award issued by the Labor Commissioner. Beck did not file the civil case cover sheet required for all civil cases by California Rules of Court, rule 3.220. The civil case

---

[1] It is unclear why Stratton sought $303.50, five cents less than the $303.55 he was owed.

[2] "Although denoted an 'appeal,' unlike a conventional appeal in a civil action, hearing under the Labor Code is de novo. (Lab. Code, § 98.2, subd. (a).) . . . The decision of the commissioner is 'entitled to no weight whatsoever, and the proceedings are truly "a trial anew in the fullest sense."' [Citation.]" (*Post v. Palo/Haklar & Associates* (2000) 23 Cal.4th 942, 947-948.)

[3] The form, which was last revised in 1983, contains checkboxes labeled "Superior Court of the State of California," "Municipal Court of the State of California," and "Justice Court of the State of California." Beck checked the box for superior court.

cover sheet is the form on which a party indicates whether a civil case is limited or unlimited; Beck accordingly made no such designation.  The clerk charged Beck a filing fee of $435.  This filing fee, which is fixed for all appeals of Labor Commissioner awards, is equivalent to the fee charged for unlimited civil cases.  (See Lab. Code, § 98.2, subd. (a); Gov. Code, § 70611; see also Superior Court of California, County of Los Angeles Civil Fee Schedule for 2014 at pp. 1, 7, available at http://www.lacourt.org/forms/Fees.)  The clerk assigned a case number prefix, BS, that is used in unlimited special proceeding civil cases, rather than a prefix, K, that is used in limited civil cases.

Shortly after Beck initiated the superior court proceeding, the Labor Commissioner served notice to Beck that the Labor Commissioner would be representing Stratton in the matter.  (See Lab. Code, § 98.4.)  The caption on that notice stated that the case was "Limited Civil."  The Commissioner later filed a case management statement form on which it checked boxes indicating that the case was limited and that the economic litigation procedures set forth in Code of Civil Procedure sections 90-98—for limited civil cases—should apply.  The Commissioner's "brief statement of the case" indicated that the case concerned "unpaid wages, liquidated damages, interests, and additional wages  . . . in the amount of $6,060.96."  Beck later checked the same boxes on the case management statement form he filed, and similarly represented that the case concerned "the sum of $6,060.96."  After holding a case management conference, the superior court ordered discovery to proceed under Code of Civil Procedure sections 94-96.

4

The superior court has discretion to permit an employee to raise additional wage-related claims at the de novo trial, and the court permitted Stratton to do so here. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1118-1119.) Approximately one month before trial, Stratton filed a "Notice of Claims" that added statutory minimum wage and wage statement claims and penalties in unspecified amounts.

The matter proceeded to a bench trial. There, Stratton clarified that his recently added wage statement claims were for damages of $100 per day for each of the 612 days he spent without accurate wage statements—a total of $61,200. During closing arguments, the court asked Beck if he wanted "to say anything about the claim that as a result of the incorrect November 27th, 2013, wage statement that Mr. Stratton has suffered damages, general damages of $61,000?" Beck told the court that the claim "took [his] breath away," not least because the amount was "way over the top" for a limited civil case. The court told Beck the case was an unlimited one, to which Beck responded, "Well, all right, then I'll withdraw what I just said because I thought this was a limited jurisdiction." The court noted, "This is the only courtroom in Mosk [Courthouse] that does both limited and unlimited." Beck proceeded with his substantive argument and did not mention the jurisdictional classification of the case further.

The superior court issued a statement of decision in which it found that Stratton was entitled to $303.55 in unpaid wages, and noted that Beck had paid Stratton all but five cents of that amount on the eve of trial. The court further awarded Stratton a waiting time penalty of $6,000 under Labor Code section 203, a wage statement penalty of $750—rather than the requested

5

$61,200—under Labor Code section 226, subdivision (e)(1), and prejudgment interest of $28.85, for a total award of $6,778.85, exclusive of fees and costs. The court entered judgment on October 21, 2015.

Fifty-eight days later, on December 18, 2015, Stratton filed a motion for attorney's fees pursuant to Labor Code sections 98.2, subdivision (c) and 226, subdivision (e)(1), and California Rules of Court, rule 3.1702. He sought $43,835, computed as 79.7 hours at a rate of $550 per hour, plus an additional $3,300 for the six hours he anticipated counsel would spend litigating the attorney's fee motion.

Beck opposed the motion. He contended that Stratton forfeited any statutory entitlement to attorney's fees by filing his motion beyond the time allowed. In Beck's view, the time allowed was 30 days, the time California Rules of Court, rules 3.1702 and 8.822 allow for such filings in limited civil cases. Beck pointed to the value of the underlying award he appealed ($6,060.96), the Labor Commissioner's notice of representation, the parties' case management statements, and the court's discovery order as evidence that the case met the statutory definition of a limited civil case set forth in Code of Civil Procedure section 85. Beck also challenged the amount of fees requested as unsupported and unreasonable.

In reply, Stratton argued that the motion for attorney's fees was timely because it was filed within the 60-day filing period provided by California Rules of Court, rules 3.1702 and 8.104 for unlimited civil cases. In support of his contention that the case "has been an unlimited case at all times," Stratton pointed to the case number prefix the clerk assigned the case, the colloquy the court had with Beck during closing arguments, and the absence

of any motion to reclassify the case pursuant to Code of Civil Procedure section 403.040. He further contended that the fees requested were reasonable and adequately supported.

Beck filed a sur-reply two days before the scheduled hearing on the fee motion. In that filing, Beck challenged Stratton's reliance on the case number as evidence of the proper jurisdictional classification; he argued that the "nomenclature system employed by a superior court to manage cases . . . does not turn a limited civil action into an unlimited civil action by the assignment of the case number." Beck further argued that his appeal was from an award well under the $25,000 threshold separating limited and unlimited civil cases, and therefore was an unlimited civil case as defined by Code of Civil Procedure section 85.

At the hearing, the court indicated it was inclined to agree with Stratton that the case was unlimited. Beck disagreed with the court's tentative, contending that the case was "presumed" to be limited under Code of Civil Procedure section 85 when it was filed because Stratton originally demanded less than $25,000 and did not add claims exceeding that threshold until late in the proceedings. Stratton agreed with the court, and contended that the clerk correctly classified the case as an unlimited one and Beck should have filed a motion for reclassification under Code of Civil Procedure section 403.040 if he wanted to change that. Beck responded that Stratton should be estopped from arguing that the case was unlimited, or that the onus was on Beck to reclassify it, because the filings the Labor Commissioner made on Stratton's behalf throughout the case, as well as the court's discovery order, suggested that Stratton also believed the case was limited. Stratton retorted that he relied on the court's

7

statement at trial that the case was unlimited. The court ultimately adopted its tentative position that the case was an unlimited one.

The court then turned to the motion for attorney's fees, which was timely in light of its jurisdictional ruling. The court rejected Beck's argument that the Labor Commissioner's hourly rate should be restricted to counsel's hourly salary as a state employee, but declined to award the Labor Commissioner the requested $550 per hour. Citing its "experience in seeing and reviewing Labor Commission request[s] for attorney's fees," and "the lower market rate" applicable to wage-and-hour lawyers, the court determined the Labor Commissioner was entitled to an hourly rate of $450. The court further concluded that the Labor Commissioner recorded the time spent contemporaneously and that the time expended "by and large, seems reasonable." However, the court agreed with Beck that some of the time spent was "a little bit higher than it could have been," especially because the controversy was "small, mostly based on princi[ple]," and awarded 69.7 hours rather than the 79.7 requested. The court accordingly awarded Stratton $31,365 in attorney's fees ($450 x 69.7 hours).

Beck timely appealed the fee award. He used the notice of appeal form for unlimited civil cases, and the appeal was routed to this court rather than the appellate division of the superior court. (See Code of Civ. Proc. §§ 904.1 & 904.2.)[4]

## DISCUSSION

Although this appeal in form concerns attorney's fees, in substance it primarily concerns the jurisdictional classification

---

[4] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

(§ 32.5) of the case—the timeliness of the fee motion turns entirely on that issue.  California Rules of Court, rule 3.1702(b)(1) provides that the notice of a motion for attorney's fees in civil cases "must be served and filed within the time for filing a notice of appeal under rules 8.104 and 8.108 in an unlimited civil case or under rules 8.822 and 8.823 in a limited civil case."  Rule 8.104 provides a 60-day time limit in which to file appeals in unlimited civil cases, while Rule 8.822 provides a 30-day time limit in limited civil cases.  Rules 8.108 and 8.823 provide exceptions to the general timeframes which are not applicable here.  Stratton's motion was filed 58 days after the court entered judgment, meaning it was timely only if the case was an unlimited civil case.  Because this issue presents a pure question of law and does not involve the resolution of disputed facts, we apply the de novo standard of review.  (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.)

The classification of civil cases as limited or unlimited has its roots in the historic division between municipal and superior courts.  (See *Ytuarte v. Superior Court* (2005) 129 Cal.App.4th 266, 274 (*Ytuarte*).)  Historically, lower civil courts were divided into municipal courts, which had subject matter jurisdiction over cases where the amount in controversy was $25,000 or less, and superior courts, which had subject matter jurisdiction over cases involving more than $25,000.  (*Ibid.*)  "A case filed in the superior court whose amount in controversy did not meet the jurisdictional minimum was subject to 'transfer' of jurisdiction under section 396 from superior court to the municipal court." (*Ibid.*)

In 1998, an amendment to the California Constitution "unified" the two separate systems "into a single superior court

9

system having original jurisdiction over all matters formerly designated as superior court and municipal court actions." (*Ytaurte, supra*, 129 Cal.App.4th at p. 274.) "After unification, the municipal courts ceased to exist. [Citation.] Now civil cases formerly within the jurisdiction of municipal courts are classified as 'limited' civil cases, while matters formerly within the jurisdiction of the superior court[] are classified as 'unlimited' civil action[s]. (§§ 85, 88.)" (*Ytuarte, supra*, 129 Cal.App.4th at p. 274.) The classification of a civil case as limited or unlimited no longer affects the subject matter jurisdiction of the superior court. (*AP-Colton LLC v. Ohaeri* (2015) 240 Cal.App.4th 500, 505 (*AP-Colton*).)

Nevertheless, "[t]he designation of a case as either a limited or an unlimited action has significant implications because the available relief and applicable procedures differ as to each. Most significantly, if a case is designated as a limited civil case, the court has no authority (i.e., jurisdiction) to award a judgment in excess of $25,000. [Citations.] In contrast, a court presiding in unlimited civil actions may enter a judgment that falls within the range of a limited civil action and/or that could have been entered in a limited civil court." (*Ytuarte, supra*, 129 Cal.App.4th at pp. 274-275.) In addition to the upper limit on monetary recovery, limited civil cases are subject to restrictions on the types of injunctive and declaratory relief available, as well as the breadth of discovery. (*Id.* at p. 275; see Code Civ. Proc., §§ 86, 91-94.) Parties in limited civil cases also must appeal to the appellate division of the superior court rather than this forum (see §§ 904.1, 904.2), and, as this case illustrates, must file their notices of appeal and motions for attorney's fees more expeditiously than parties in unlimited civil cases.

10

The distinctions between limited and unlimited civil cases—primarily, the limitations placed on limited cases—"are reflected in the language of the statutory scheme governing the designation of civil actions.  The boundaries of 'limited' civil actions are narrowly and precisely delineated and defined.  Pursuant to section 85 a proceeding *may not* be treated as a limited civil action *unless all* of the following conditions are satisfied:  (a) the amount in controversy does not exceed $25,000; (b) the relief sought is a type that may be granted in a limited civil case; and (c) the relief sought is exclusively of a type described in the statutes, including section 86, that classify an action as a limited civil case or that provide the action is within the jurisdiction of a court presiding over limited civil cases. (§ 85.)  In contrast, the statutory scheme contains a broad catchall definition of 'unlimited' civil actions, designating them as all actions and proceedings other than limited civil actions. (§ 88.)"  (*Ytuarte*, *supra*, 129 Cal.App.4th at p. 275, fn. omitted.)

As a practical matter, this means that a civil case is classified as unlimited by default; extra requirements must be satisfied to render a case limited.  The Code of Civil Procedure and the California Rules of Court require parties to explicitly indicate that a case is limited.  Section 422.30, subdivision (b) provides, "In a limited civil case, the caption shall state that the case is a limited civil case, and the clerk shall classify the case accordingly."  Rule 2.111(10) similarly requires that, "In the caption of every pleading and every other paper filed in a limited civil case, the words 'Limited Civil Case'" appear. Compliance with these provisions is important; the Law Revision Commission has stated that the "the clerk is to rely on the caption in determining how to classify a civil case that is brought in a

11

unified superior court." (Cal. Law Revision Com. com., 14B West Ann. Code Civ. Proc. (2016 ed.) foll. § 422.30 , p. 251.)

A civil case is jurisdictionally classified as either limited or unlimited civil at its outset. "Once classified as limited or unlimited that classification normally continues throughout the litigation. If, however, a matter has been designated as an unlimited action, and yet the amount in controversy is $25,000 or less, the statutory scheme authorizes 'reclassification' of the case as a 'limited' action and transfer of the matter to a superior court presiding over such actions. (§ 403.040, subd. (a).)" (*Ytuarte*, *supra*, 129 Cal.App.4th at p. 274.) Likewise, a case originally designated as a limited action may be reclassified as an unlimited action if amendments to the initial pleading (§ 403.020) or causes of action asserted in a cross-complaint (§ 403.030) cause the amount in controversy to exceed $25,000 or otherwise violate the necessary conditions for classification as a limited civil case. (See *AP-Colton*, *supra*, 240 Cal.App.4th at p. 505.) Parties may reclassify a case by filing a motion to do so, as may the court on its own motion. (§ 403.040.) The parties here agree that neither side nor the court undertook any effort to reclassify the case. Beck's position is that the case is and always was a limited one, while Stratton maintains that the case is and always was an unlimited one.

Stratton has the better argument on the unique facts of this case. When Beck initiated the action in superior court, he did not file a civil case cover sheet designating the case as limited or unlimited as required by Rule 3.320. He likewise did not comply with section 422.30 or Rule 2.111(10) by explicitly stating in the case caption that he intended the case to be classified as a limited one. The case accordingly was, by default, an unlimited

12

one.  Just as a "persuasive argument [could] be made that when a litigant files an action in a particular court he intends to submit himself to the jurisdictional limits of that court" when the municipal and superior courts were divided (*Babcock v. Antis* (1979) 94 Cal.App.3d 823, 828), after unification a persuasive argument may be made that a party filing the case without indicating that he or she wishes the case to be limited intends it to be unlimited.  The clerk who filed this case complied with his or her ministerial duty to classify the case based on its caption when he or she assigned the case a prefix indicating that it was unlimited.  The clerk did not, as Beck suggests, blindly adhere to superior court procedures that conflict with statutes or rules of court.

Beck contends that despite his noncompliance with the requirements for designating a case as limited, the superior court action automatically was a limited civil case by operation of law, primarily section 85.  We disagree.

Section 85—the statute that restrictively defines limited civil cases—was added to the Code of Civil Procedure in 1998 "to accommodate unification of the municipal and superior courts in a county."  (Cal. Law Revision Com. com., 13 West Ann. Code Civ. Proc.  (2006 ed.) foll. § 85, p. 200.)  It includes mandatory language stating that  "an action or special proceeding shall be treated as a limited civil case" when all three of the statute's conditions are satisfied, and "shall not be treated as a limited civil case unless all" of those same conditions are satisfied.  (§ 85.)  Beck argues that his appeal to the superior court met the criteria in section 85 and therefore was required to be classified as a limited civil case due to the statute's mandatory language.  Even if we assume that the pleading Beck filed met the requisite

13

criteria listed in section 85, reading section 85 in isolation and granting it the weight Beck accords it would render numerous other sections of the Code of Civil Procedure and California Rules of Court governing case classification superfluous. "It is a settled principle of statutory construction, that courts should 'strive to give meaning to every word in a statute and to avoid constructions that render words, phrases, or clauses superfluous.' [Citations.] We harmonize statutory provisions, if possible, giving each provision full effect. [Citation.]" (*In re C.H.* (2011) 53 Cal.4th 94, 103.) It does not make sense to have statutes and rules requiring parties to follow special procedures to indicate that their case is a limited one if section 85 classifies cases independently of parties' actions or intentions. Reading section 85 in isolation would entirely eliminate responsibilities now placed upon the filer by the Code of Civil Procedure and the Rules of Court. We are not inclined to read those provisions or obligations out of the law.

Beck further contends that Stratton should be judicially estopped from claiming the case is unlimited. He argues that Stratton's counsel, the Labor Commissioner, "acknowledged this was a limited civil special proceeding" and "Beck relied on the Commissioner's representations to him and the Court throughout the pretrial and trial proceedings only to be surprised to learn the Commissioner as well as the court were claiming the action was unlimited mid trial." We are not persuaded.

Judicial estoppel is a doctrine aimed at protecting both the integrity of the judicial system and litigating parties whose opponents employ unfair strategies. (*AP-Colton*, *supra*, 240 Cal.App.4th at p. 507.) It precludes a party from gaining an advantage by taking one position and later taking a contrary

14

position to gain a second advantage. (*Ibid.*) The doctrine is discretionary, and may be applied when (1) a party has taken two positions in judicial or quasi-judicial administrative proceedings; (2) the party was successful in asserting the first position, such that the tribunal adopted the position or accepted it as true; (3) the two positions are totally inconsistent; and (4) the first position was not taken due to ignorance, mistake, or fraud. (*Ibid.*) Judicial estoppel is potentially applicable where a party takes inconsistent positions on jurisdictional classification because such disputes do not strike at the court's fundamental subject matter jurisdiction; subject matter jurisdiction cannot be conferred by estoppel, waiver, or consent. (*Ibid.*)

Judicial estoppel is not applicable in this case. Assuming Stratton and the Labor Commissioner took the position that the case was limited by including the designation on some—but not all—of their filings, there is no indication in the record that the court ever adopted this position or accepted it as true. Although the court did order limited discovery pursuant to sections 94 through 96, it explained at the hearing its belief that such an order "was merely an exercise of my discretion to supervise and manage discovery in the case," and that its discovery rulings turn on "a lot of factors," not the case's jurisdictional classification. The court allowed Stratton to assert claims well in excess of the $25,000 threshold and expressly advised Beck that the case was an unlimited one. All of these facts indicate that the court never adopted the position that the case was limited. Moreover, it is unclear what tactical advantage, if any, Stratton would have gained by indicating that the case was limited on some of his filings. Stratton, the party seeking recovery, would incur no benefit by necessarily restricting his claims to $25,000 or his

15

discovery to the economic procedures set forth in sections 94-96.

Because we conclude that this case is unlimited, and that Stratton is not estopped from so asserting, we conclude Rule 8.104 governed the time to file a motion for attorney's fees. The motion Stratton filed 58 days after the entry of judgment accordingly was timely, and the superior court properly considered it on the merits. Also, because the case is unlimited, we have jurisdiction and will therefore consider the remaining issue presented by Beck's appeal: whether the $31,365 fee award was reasonable.[5]

"'The standard of review on issues of attorney's fees and costs is abuse of discretion. The trial court's decision will only be disturbed when there is no substantial evidence to support the trial court's findings or when there has been a miscarriage of justice. If the trial court has made no findings, the reviewing court will infer all findings necessary to support the judgment and then examine the record to see if the findings are based on substantial evidence.' [Citation.]" (*Frei v. Davey* (2004) 124 Cal.App.4th 1506, 1512.)

_____

[5] Attorney's fees in this case were authorized by Labor Code section 98.2, subdivision (c), a one-way fee-shifting provision that states, "If the party seeking review by filing an appeal to the superior court is unsuccessful in the appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other parties to the appeal, and assess that amount as a cost upon the party filing the appeal. An employee is successful if the court awards an amount greater than zero." This provision "serves the legislative purpose of discouraging unmeritorious appeals of wage claims, thereby reducing the costs and delays of prolonged disputes, by imposing the full costs of litigation on the unsuccessful appellant." (*Lolley v. Campbell* (2002) 28 Cal.4th 367, 376.)

Beck first argues that the hourly rate of $450 was not supported by substantial evidence. We disagree. Stratton's attorney, who sought $550 per hour, submitted a declaration detailing his decades of experience in labor law, his familiarity with the billing rates—$500 to $800 per hour—charged by similarly experienced labor lawyers in the Los Angeles area, and the work he performed on the case. He also provided the court with an order from 2005 in which he was awarded $350 per hour, and a 2011 declaration in which a similarly experienced attorney at a private Los Angeles firm sought $530 per hour. This evidence was sufficient to support the superior court's conclusion that $450 was a reasonable hourly rate for the Labor Commissioner. The superior court also noted that it had "experience in seeing and reviewing Labor Commission request[s] for attorney's fees." We find no abuse of discretion in the superior court's hourly rate award.

Beck next contends that the superior court's award of 69.7 hours of compensable time should be reduced by an additional 16.6 hours, to 53.1 hours, because the time claimed for various tasks was unreasonably high. He further claims that the superior court should have been more concerned that the Labor Commissioner's time sheet "was clearly not contemporaneously recorded but reconstructed," and reduced the award further than it did as a result. We are not persuaded that the court abused its discretion in fixing the number of compensable hours at 69.7, 10 hours less than the 79.7 hours requested. First, the trial court explicitly found that the billing sheets were prepared contemporaneously, and Beck has not pointed to anything calling that finding into question. Second, even if the billing records were not prepared contemporaneously, the case Beck cites,

17

*PLCM, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1096, fn. 4, suggests only that contemporaneous records are preferred, not required. Beck does not dispute that the records are accurate. Instead, he contends the Labor Commissioner spent too much time on legal research and client counseling, and improperly billed for travel and time worked after the 30-day period in which Beck maintains the attorney's fee motion should have been filed. The latter contention—and concomitant suggested reduction of 5.7 hours—is not persuasive in light of our conclusion that the fee motion was filed timely. We likewise find no abuse of discretion in the trial court's conclusion that it was reasonable for out-of-town counsel to bill for 3.4 hours of travel time to get to and from court, 4.2 hours to conduct legal research, and 6.6 hours to confer with his client.

Beck finally contends that the superior court's fee award was unjust and grossly disproportionate to the "disputed wage claim in this case [of] $303.50." He relies on *Harrington v. Payroll Entertainment Services, Inc.* (2008) 160 Cal.App.4th 589, in which the plaintiff requested $46,277 in fees in a dispute over $44.63 in overtime wages that was settled for $10,500. The trial court denied fees entirely, and the appellate court reversed and remanded with instructions to award $500, an award it deemed appropriate "[g]iven the nature of the dispute, the amount of the settlement, and the record on appeal." (*Harrington, supra*, 160 Cal.App.4th at p. 594.) Beck points to the appellate court's colorful statement that "there is no way on earth this case justified the hours purportedly billed by Harrington's lawyers," and contends the same is true in this case. (*Ibid.*)

We conclude that *Harrington* is distinguishable in at least two significant ways. First, the fees requested in *Harrington*

18

exceeded the amount in controversy by a factor of roughly 1,000, and the plaintiff received a settlement of $10,500 that the court characterized as a "windfall" and found "'can and should be shared with his many attorneys.'" (*Harrington*, *supra*, at p. 593.) Here, the fee award of $31,365 exceeds the judgment only by a factor of five—and the amount at stake in this case potentially exceeded $60,000. Second, the court in *Harrington* found that it was "plain that Harrington was underpaid as the result of an honest mistake made in reliance on a formula provided by his union, not based on any willful or knowingly wrongful conduct by" his employer. (*Id.* at p. 594.) Here, the superior court found that although Beck initially acted in good faith by calling ADP and arranging payment of the ordinary wages Stratton claimed, he "could no longer claim in good faith the [payment ADP made] was the full amount of straight time owed to [Stratton]" by the time of the hearing before the Labor Commissioner. Beck continued to refuse to pay Stratton the $303.55, however, which the trial court reasonably concluded was an intentional withholding meriting penalties—and attorney's fees when challenged in superior court. In short, these arguments do not demonstrate an abuse of discretion by the trial court on the facts of this case.

## DISPOSITION

The judgment of the trial court is affirmed.  In the interest of justice, the parties are to bear their own costs of appeal.


COLLINS, J.


We concur:


EPSTEIN, P. J.


WILLHITE, J.


20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THOMAS E. BECK,<br><br>    Plaintiff and Appellant,<br><br>  v.<br><br>ANTHONY STRATTON,<br><br>    Defendant and Respondent. | B270826<br><br>Los Angeles County<br>Super. Ct. No. BS152046<br><br>**ORDER CERTIFYING<br>OPINION<br>FOR PUBLICATION** |

THE COURT∗

The opinion in the above-entitled matter filed on February 14, 2017, was not certified for publication in the Official Reports. Good cause appearing, it is ordered that the opinion in the above-entitled matter be published in the official reports. Pursuant to California Rules of Court, rule 8.1105(b), this opinion is certified for publication.

_____

∗EPSTEIN, P.J.        WILLHITE, J.        COLLINS, J.