Filed 12/4/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| VILLA ZINFANDEL, LLC,<br><br>　　　Plaintiff and Respondent,<br>v.<br><br>CHRISTOPHER BEARMAN,<br><br>　　　Defendant and Appellant. | A171987<br><br>(Napa County<br>Super. Ct. No. 22CV001130) |

Plaintiff Villa Zinfandel, LLC (Villa Zinfandel) purchased real property from the party that had purchased it at a foreclosure sale. Defendant Christopher Bearman occupied the property.

Villa Zinfandel filed an unlawful detainer case against Bearman as a limited civil action, in which damages are limited to $35,000. (Code Civ. Proc.,[1] § 85, subd. (a).) The action was subsequently consolidated for all purposes with an unlimited civil action that sought to unwind the foreclosure sale. The trial court granted summary adjudication as to the latter claim, and Villa Zinfandel's unlawful detainer claim proceeded to trial. As part of its case-in-chief, Villa Zinfandel had to prove that the foreclosure sale was conducted in accordance with Civil Code section 2924 (§ 1161a, subd. (b)(3)), which requires the recording and posting of certain notices. The court ultimately found in favor of Villa Zinfandel and awarded it damages exceeding $300,000.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

On appeal, Bearman contends the trial court erred in failing to sustain his objections to the admissibility of the statutory foreclosure notices and the trustee's deed upon sale. He further argues that the award of damages should be reduced to $35,000 because consolidation did not remove the jurisdictional cap on Villa Zinfandel's damages claim.[2] We reject both contentions and affirm.

## I. BACKGROUND

In September 2022, Villa Zinfandel filed an unlawful detainer complaint against Bearman. The caption of the complaint stated that the case was a "Limited Civil Case." The complaint alleged the following facts: Bearman or his predecessors executed a deed of trust secured by real property located in Saint Helena (the "Property"). They later defaulted under the terms of the deed of trust, and a notice of default was recorded. After Bearman or his predecessors failed to cure the default, a notice of trustee's sale of the Property was recorded. The Property was sold to Bank of New York Mellon (BNYM) in compliance with Civil Code section 2924 et seq., and a trustee's deed upon sale was recorded. BNYM sold the Property to Villa Zinfandel.

As required by section 1161a, subdivision (b)(3), Villa Zinfandel served a three-day notice to quit upon Bearman. However, Bearman refused to relinquish possession of the Property. As a result, Villa Zinfandel sought holdover damages "at a daily rate" from the date of its complaint until the date that judgment was entered.

---

[2] Throughout his brief, Bearman claims that the jurisdictional cap on damages is $25,000. That was the case up until January 2024, when amendments to section 85 raising the jurisdictional cap to $35,000 became effective. (Stats. 2023, ch. 861, § 2.)

In December 2022, Edward Sanchez filed a separate action against BNYM, Villa Zinfandel, and the Law Offices of Les Zieve, the foreclosure trustee, to set aside the trustee's deed upon sale. He alleged that BNYM and the Law Offices of Les Zieve violated Civil Code section 2924m, under which an "eligible bidder" has 15 days from the foreclosure sale to submit a bid equal to or higher than the last and highest bid and then 45 days from the sale date to pay the bid to the trustee. (Civ. Code, § 2924m, subd. (c)(1), (3), 4(A).) Sanchez claimed he was an eligible bidder and timely submitted a bid letter in compliance with Civil Code section 2924m, but defendants transferred title to the Property to BNYM only two days later. Sanchez further alleged that Villa Zinfandel knew the foreclosure sale was conducted in violation of Civil Code section 2924m, and thus it was not a bona fide purchaser of the Property.

The following month, Bearman filed a motion to stay the unlawful detainer action and/or consolidate the action with Sanchez's action. He argued the two matters should be resolved simultaneously to avoid the possibility of inconsistent outcomes. Villa Zinfandel opposed the motion, arguing that the actions involved different parties and did not present common questions of law or fact.

The trial court initially denied the motion to stay and/or consolidate but sua sponte reconsidered the motion after the parties submitted supplemental briefs regarding whether non-compliance with Civil Code section 2924m could be raised as an affirmative defense in the unlawful detainer action. The court concluded it could be raised as an affirmative defense and found that consolidation of the two actions was therefore justified. The court noted that upon consolidation, "the unlawful detainer action is treated as an ordinary civil action rather than as a summary proceeding," meaning that the

3

expedited procedures of unlawful detainer no longer applied. (See *Martin-Bragg v. Moore* (2013) 219 Cal.App.4th 367, 388–389.)

In May 2024, the trial court granted the wrongful foreclosure defendants' motion for summary judgment of Sanchez's cause of action to set aside the trustee's deed upon sale. The court later corrected its ruling to grant summary adjudication, rather than summary judgment, since Sanchez's action had been consolidated with the unlawful detainer action "for all purposes" and only one judgment could be entered in the consolidated action.

Thereafter, Villa Zinfandel moved for summary judgment on its unlawful detainer complaint. The trial court denied the motion on the ground that Villa Zinfandel provided Bearman insufficient notice of the motion. It reasoned that the shortened notice period for summary judgment motions filed in unlawful detainer actions did not apply because the "order consolidating the two matters for all purposes serves to remove the unlawful detainer cause of action from its expedited nature."

Trial on Villa Zinfandel's unlawful detainer complaint was held in June 2024. Three people testified on behalf of Villa Zinfandel, including Les Poppitt, an assistant administrator for the Law Offices of Les Zieve. The appellate record does not include a reporter's transcript, but the clerk's transcript shows that Poppitt testified he was familiar with the maintenance and storage of business records at the Law Offices of Les Zieve, and he described the steps the Law Offices of Les Zieve took as the foreclosure trustee, such as recording the notice of default and the notice of trustee's sale. Several documents, including the recorded notice of default, notice of trustee's sale, and trustee's deed upon sale, were admitted into evidence.

4

Bearman objected to the admission of the recorded notices and the recorded trustee's deed upon sale on the grounds of hearsay and lack of foundation. He argued that Poppitt did not have personal knowledge of the amount of the default set forth in those documents.

Following closing arguments, the trial court requested briefing from the parties on two issues: (1) whether Villa Zinfandel was required to "prove-up" the amounts owed under the deed of trust as part of its case-in-chief for its unlawful detainer claim; and (2) whether the order consolidating the unlawful detainer complaint with Sanchez's unlimited civil action had the effect of removing the " 'limited' " designation from the unlawful detainer complaint, thereby allowing Villa Zinfandel to seek holdover damages greater than $35,000.

Regarding the first issue, Villa Zinfandel argued that an unlawful detainer plaintiff does not have to prove the borrower's underlying default on the loan or the amount owed on the loan at the time of foreclosure. Rather, the plaintiff is only required to prove the "technical validity" of the trustee's compliance with Civil Code section 2924 in conducting the sale. Bearman disagreed, contending that an unlawful detainer plaintiff must not only submit the recorded notices and trustee's deed upon sale, but must also establish that the allegations in those documents are true. He further argued that the recorded notices and the truth of the matters asserted therein were not judicially noticeable.

On the second issue, Villa Zinfandel argued that a single action cannot be of both limited and unlimited jurisdiction under section 88. It contended that because Bearman sought to have the unlawful detainer action consolidated with Sanchez's unlimited civil action, Bearman consented to the reclassification of the unlawful detainer action as unlimited. Bearman

5

asserted that there was no authority for the proposition that a limited action is converted into an unlimited action upon consolidation.

In August 2024, the trial court issued a tentative decision finding in favor of Villa Zinfandel on its unlawful detainer complaint and awarding Villa Zinfandel $340,000 in holdover damages, continuing at a daily rate of $923.08 through judgment. In response, Bearman informed the court that he was objecting to "every statement made" in the recorded documents, and not just "whether there was any default."

In October 2024, the trial court issued a final statement of decision that was consistent with its tentative decision. In reaching its decision, the court took judicial notice of the recorded documents "but not for the truth of the matters contained therein." Judgment was entered in favor of Villa Zinfandel.

## II. DISCUSSION

### A. Bearman's Evidentiary Objections to the Recorded Notices and Trustee's Deed Upon Sale

Bearman contends the trial court erred in failing to sustain his evidentiary objections to the recorded notice of default, notice of trustee's sale, and trustee's deed upon sale. In challenging the admissibility of those documents at trial on hearsay and lack of foundation grounds, he argued that Poppitt did not have personal knowledge of the factual statements in the recorded documents, namely the amount of the default. He reiterates this argument on appeal and contends the trial court should have sustained his objections to those documents because section 1161a requires an unlawful detainer plaintiff to establish the truth of the allegations in the recorded documents. He further claims the documents were not judicially noticeable. We disagree on both counts.

6

We first dispense with Bearman's second argument. His assertion that the recorded documents were inadmissible and not subject to judicial notice appears to rest on his claim that Villa Zinfandel failed to prove the truth of the documents' factual allegations. But the trial court, in taking judicial notice of the recorded documents, stated it was *not* taking judicial notice of the truth of the matters asserted in those documents. This was proper. While courts cannot take judicial notice of factual representations in recorded documents, "a court may take judicial notice of . . . a document's recordation, the date the document was recorded and executed, the parties to the transaction reflected in a recorded document, and the document's legally operative language, assuming there is no genuine dispute regarding the document's authenticity. From this, the court may deduce and rely upon the legal effect of the recorded document, when that effect is clear from its face." (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 265, disapproved of on other grounds in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939, fn. 13; see *Yvanova*, at p. 924, fn.1 [judicial notice of the "existence and facial contents" of recorded documents, including notices of default and a trustee's deed upon sale, was proper].) Here, Bearman did not dispute the recorded documents' authenticity. Thus, the court did not err in taking judicial notice of the existence and facial contents of the recorded documents.

We therefore turn to the elements of Villa Zinfandel's case-in-chief and whether it was required to prove the truth of the matters asserted in the recorded foreclosure documents. "An unlawful detainer action is a summary proceeding ordinarily limited to resolution of the question of possession." (*Malkoskie v. Option One Mortgage Corp.* (2010) 188 Cal.App.4th 968, 973.) However, a "qualified exception to the rule that title cannot be tried in

7

unlawful detainer is contained in Code of Civil Procedure section 1161a, which extends the summary eviction remedy beyond the conventional landlord-tenant relationship to include certain purchasers of property." (*Vella v. Hudgins* (1977) 20 Cal.3d 251, 255, superseded by constitutional amendment on other grounds as stated in *Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 1011–1012.)  Under section 1161a, subdivision (b)(3), an unlawful detainer action may be filed "[w]here the property has been sold in accordance with Section 2924 of the Civil Code, under a power of sale contained in a deed of trust . . . and the title under the sale has been duly perfected."  (§ 1161a, subd. (b)(3).)  Section 1161a therefore provides for "a 'narrow and sharply focused examination of title' directed at the formal validity of the trustee sale."  (*Asuncion v. Superior Court* (1980) 108 Cal.App.3d 141, 144, quoting *Vella*, at p. 255.)

Thus, a party who purchases property from the party who bought it at a trustee's sale must prove in an unlawful detainer action that the requirements under section 1161a, subdivision (b)(3) have been satisfied, "i.e., that the sale was conducted in accordance with section 2924 of the Civil Code and that title under such sale was duly perfected."  (*Stephens, Partain & Cunningham v. Hollis* (1987) 196 Cal.App.3d 948, 953.)

Civil Code section 2924, in turn, sets forth some of the "ministerial acts" the trustee must perform in conducting a nonjudicial foreclosure sale. (*Pro Value Properties, Inc. v. Quality Loan Service Corp.* (2009) 170 Cal.App.4th 579, 583.)  Under Civil Code section 2924, the trustee or its agents must first record a notice of default.  (Civ. Code, § 2924, subd. (a)(1).) Subdivision (a)(1) of Civil Code section 2924 establishes content requirements for the notice of default, including a statement setting forth the amount required to cure the default.  After three months, the trustee may give notice

of sale "in the manner and for a time not less than that set forth in Section 2924f." (*Id.*, subd. (a)(3).) Civil Code section 2924f requires the trustee to post a notice of sale at least 20 days before the date of sale at the property to be sold and to publish the notice in a local newspaper of general circulation. (Civ. Code, § 2924f, subd. (b)(2), (3).) The notice must also be recorded and then mailed to the trustor, and it must contain certain information. (*Id.*, subds. (b)(4), (5), (7), (c)(3).)

Bearman does not claim that the Law Offices of Les Zieve failed to carry out any of the procedures explicitly outlined in Civil Code sections 2924 and 2924f. Indeed, from our review of the limited record before us, it appears that Poppitt's testimony and the facts of which the trial court took judicial notice established the foreclosure trustee's compliance with Civil Code section 2924, including the recordation, posting, and publication of the required notices within the statutory timelines. And the recorded trustee's deed upon sale indicated that title was perfected. (See *Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474, 479–480.)

As to Bearman's assertion that Villa Zinfandel was required to prove the truth of the allegations in the recorded documents, we have found no authority, and Bearman does not cite any, requiring a plaintiff to prove the truth of the statements contained in the notices required under Civil Code section 2924 as part of its case-in-chief under section 1161a, subdivision (b)(3). The law is to the contrary.

Certain presumptions in favor of the purchaser of the property apply when establishing that the trustee's sale was regularly held. Upon completion of the trustee's sale and delivery of the deed, a common law rebuttable presumption arises that the sale has been conducted regularly and fairly. (*Bank of America v. La Jolla Group II* (2005) 129 Cal.App.4th 706,

9

713.)  It is the burden of the party attacking the sale to "overcome this common law presumption 'by pleading and proving an improper procedure and the resulting prejudice.' " (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 86, fn. 4; see *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1258 [common law presumption can only be rebutted by "substantial evidence of prejudicial procedural irregularity"].)

There is also a statutory presumption under Civil Code section 2924, subdivision (c).  Where the trustee's deed "recites that all procedural requirements for the default notice and sale notice have been satisfied, there is a statutory rebuttable presumption that such notice requirements have been fulfilled; as to a [bona fide purchaser], this presumption is conclusive." (*Melendrez v. D & I Investment, Inc.*, *supra*, 127 Cal.App.4th at p. 1255; see *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 831–832.)  "This statutory presumption was clearly intended . . . ' "to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." ' " (*Melendrez*, at p. 1255.)

The trial court here relied on the statutory presumption in concluding that Villa Zinfandel produced sufficient evidence that the trustee conducted the foreclosure sale in accordance with Civil Code section 2924, since the trustee's deed upon sale contained the recital required for the presumption to apply.  Moreover, the common law presumption applied because recordation of the trustee's deed constituted prima facie evidence of delivery of the deed. (Evid. Code, § 1600, subd. (a); *Butler v. Butler* (1961) 188 Cal.App.2d 228, 233.)  Thus, even if BNYM or Villa Zinfandel were not bona fide purchasers, Bearman had the burden to prove any irregularities in the conduct of the sale.  While he disputed the amount of the default at trial, he did not cross-examine Poppitt or produce any evidence.  He merely argued that the

10

recorded documents were inadmissible absent evidence of the truth of the allegations in the documents. This was insufficient to meet his burden to prove irregularities in the conduct of the sale. (See *Kalnoki v. First American Trustee Servicing Solutions, LLC* (2017) 8 Cal.App.5th 23, 45 [conclusory allegations that trustee's deed upon sale falsely recites that the statutory requirements under Civil Code section 2924 have been met is insufficient to rebut presumption that the sale was conducted regularly].)

Accordingly, there is no merit to Bearman's assertion that the trial court erred in taking judicial notice of the recorded documents and in failing to sustain his objections to the admissibility of those documents.

## B. The Trial Court's Award of Holdover Damages to Villa Zinfandel

Bearman next argues that the trial court erred in awarding Villa Zinfandel damages in excess of the jurisdictional limit of $35,000 for actions prosecuted as a limited civil action. The court did so because it concluded that the consolidated action was unlimited. Bearman contends the court's reasoning was erroneous because the authority it relied on says nothing about the classification of a consolidated action, and no party took affirmative action to reclassify the limited unlawful detainer case. As we will explain, the trial court did not act in excess of its jurisdiction in awarding Villa Zinfandel $340,000 in holdover damages based on the law governing the classification and consolidation of cases and the court's inherent authority to adopt appropriate procedures " 'in the gaps left unaddressed by statutes and the rules of court.' " (*People v. Arrendondo* (2019) 8 Cal.5th 694, 707.)

### 1. The Law Governing Classification and Reclassification of Civil Cases

11

A civil case may be classified as a "limited" civil action or as an "unlimited" civil action. (§§ 85, 88.) Section 85 defines a limited civil case as one in which the "amount in controversy" does not exceed $35,000, and it further defines the "amount in controversy" as "the amount of the demand, or the recovery sought, or the value of the property, or the amount of the lien, that is in controversy in the action, exclusive of attorneys' fees, interest, and costs." (§ 85, subd. (a).) "A civil action or proceeding other than a limited civil case may be referred to as an unlimited civil case." (§ 88.)

"The statutory scheme governing the designation of civil actions makes clear that 'a civil case is classified as unlimited by default; extra requirements must be satisfied to render a case limited.' " (*County of Humboldt v. Appellate Division of Superior Court* (2020) 46 Cal.App.5th 298, 308.) Even if a case qualifies as a limited case, the party must explicitly state that the case is limited in its pleading. (*Stratton v. Beck* (2017) 9 Cal.App.5th 483, 493; see § 422.30, subd. (b) ["In a limited civil case, the caption shall state that the case is a limited civil case, and the clerk shall classify the case accordingly."].)

"The designation of a case as either a limited or an unlimited action has significant implications because the available relief and applicable procedures differ as to each. Most significantly, if a case is designated as a limited civil case, the court has no authority (i.e., jurisdiction) to award a judgment in excess of $25,000." (*Ytuarte v. Superior Court* (2005) 129 Cal.App.4th 266, 274–275.)

"Once classified as limited or unlimited that classification normally continues throughout the litigation." (*Ytuarte v. Superior Court*, *supra*, 129 Cal.App.4th at p. 274.) However, under the reclassification statutes (§ 403.010 et seq.), reclassification of a case can be accomplished in several

12

ways, all of which require some affirmative action from the parties or the court.  (§§ 403.020, subd. (a), 403.030, 403.040, subd. (a), 403.050.)

Here, there is no dispute that the unlawful detainer action was designated a limited civil action at its outset, since the caption in Villa Zinfandel's complaint stated the action was a "Limited Civil Case."  There is also no dispute that Sanchez's action was an unlimited civil action.  He sought relief not available in a limited action (see *Ytuarte v. Superior Court*, *supra*, 129 Cal.App.4th at p. 275; § 85, subd. (b)), and he did not designate the action as a limited civil case in his pleadings.  After the two actions were consolidated, no party sought to reclassify the case.

### 2. *The Effect of Consolidation on an Action*

If there are pending actions before the court that involve "a common question of law or fact," section 1048 permits the trial court to "order a joint hearing or trial" or to "order all the actions consolidated."  (§ 1048, subd. (a).)  "Under the statute and the case law, there are thus two types of consolidation:  a consolidation for purposes of trial only, where the two actions remain otherwise separate; and a complete consolidation or consolidation for all purposes." (*Hamilton v. Asbestos Corp., Ltd.* (2000) 22 Cal.4th 1127, 1147.)

When two actions are consolidated "for all purposes," "the two actions are merged into a single proceeding under one case number and result in only one verdict or set of findings and one judgment." (*Hamilton v. Asbestos Corp., Ltd.*, *supra*, 22 Cal.4th at p. 1147; see *Sanchez v. Superior Court* (1988) 203 Cal.App.3d 1391, 1396 ["the pleadings are regarded as merged, one set of findings is made, and one judgment is rendered"].)  And " 'for the purposes of all further proceedings, the cases are to be treated as if the causes had been united originally.' " (*McClure v. Donovan* (1949) 33 Cal.2d 717, 722.)

13

"In other words, the actions are viewed as if the same plaintiff or plaintiffs had filed a single complaint on joined causes of action against the same defendant or defendants." (5 Witkin, Cal. Procedure (6th ed. 2023), Pleading, § 360; see, e.g., *Day v. Rosenthal* (1985) 170 Cal.App.3d 1125, 1168, 1175 & fn. 43 [rejecting argument that jury waivers were ineffective in some of the consolidated cases in part because the cases had been consolidated for all purposes]; *Committee for Responsible Planning v. City of Indian Wells* (1990) 225 Cal.App.3d 191, 198–199 [appeal dismissed because individual judgments in consolidated action were "merely interlocutory" due to other pending claims].)

Here, the trial court consolidated the unlawful detainer action and Sanchez's action for all purposes.[3] As a result of the consolidation, the trial court treated the two cases as if they were a single action.

---

[3] Bearman argues that the unlawful detainer action was "merely stayed" and had different parties than the Sanchez action. To the extent he is suggesting that consolidation for all purposes was improper here, he forfeited his right to challenge the consolidation order. He was the party who moved to consolidate the cases, and it is clear from the record that he acquiesced to consolidation for all purposes. "[A]n appellant waives [the] right to attack error by expressly or implicitly agreeing or acquiescing at trial to the ruling or procedure objected to on appeal." (*In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501; see, e.g., *Dunlap v. Commercial National Bank of Los Angeles* (1920) 50 Cal.App. 476, 481–482 [appellant could not attack consolidation order on appeal where he consented to consolidation in the trial court].)

Further, Villa Zinfandel sought holdover damages "at a daily rate" until the date of judgment. The consolidation order had the effect of transforming the unlawful detainer claim from an expedited proceeding into an ordinary civil action, thereby opening Bearman up to greater than anticipated holdover damages. Had Villa Zinfandel not been misled by the order consolidating the cases for all purposes, it might have moved to reclassify its unlawful detainer action as unlimited. Thus, we will presume consolidation for all purposes was proper in this case.

### 3. *Analysis*

Prior to rendering judgment, the trial court concluded that the consolidated action could not be classified as both limited and unlimited under section 88 since it constituted a single action. The court further concluded that the consolidated action was an unlimited civil case. We agree with the trial court's interpretation of section 88 and conclude that under the circumstances in this case, the court did not err in awarding Villa Zinfandel damages above the $35,000 cap applicable to cases designated as limited civil actions.

As a preliminary matter, neither party cites, and we have been unable to find, any case that addresses the classification of a consolidated action. Nor does there appear to be any published cases interpreting section 88 or the other classification statutes in the context of a complete consolidation. The cases relied upon by the trial court are distinguishable because they do not involve the classification of a consolidated action. (See generally *Lynch & Freytag v. Cooper* (1990) 218 Cal.App.3d 603; *AP-Colton LLC v. Ohaeri* (2015) 240 Cal.App.4th 500.)[4] We therefore consider the instant question to be one of first impression.

___

[4] The trial court cited *AP-Colton LLC* for its conclusion that even if the jurisdictional cap on damages applied in the consolidated action, Bearman was estopped from asserting the cap since he moved to consolidate the cases and stay the unlawful detainer claim. *AP-Colton LLC* applied principles of judicial estoppel, which requires a showing that a party has taken inconsistent positions in a judicial proceeding. (*AP-Colton LLC v. Ohaeri, supra*, 240 Cal.App.4th at p. 507.) Bearman never claimed that the consolidated action was unlimited or that the jurisdictional cap on damages no longer applied. To the contrary, he argued in the trial court and on appeal that consolidation did not convert the unlawful detainer action into an unlimited action. Without a determination that the action became an

15

In reviewing a trial court's interpretation of a statute, we apply a de novo standard of review. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.) In interpreting a statute, our objective is to ascertain and effectuate legislative intent. (*Ibid.*) We look first to the language of the statute and give effect to its plain meaning. (*Ibid.*) Although we look first to the text of the statute, we also may consider extrinsic aids (*ibid.*), including the " 'maxims of construction' " and " 'the reasonableness of a proposed construction' " (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1082, 1083).

Turning first to the statutory text, section 88 provides that "[a] civil action or proceeding *other than a limited civil case* may be referred to as an unlimited case." (Italics added.) Under the plain language of the statute, a civil action that has been classified as limited cannot also be classified as unlimited. As a practical matter, this must be true because many of the consequences of a "limited" classification are inconsistent with the consequences of an "unlimited" classification. (See *Ytuarte v. Superior Court*, *supra*, 129 Cal.App.4th at pp. 274–275.) In particular, the $35,000 cap on damages either applies or does not apply depending on an action's classification. (See *ibid.*) In short, the statutory language and the consequences of classification support the trial court's conclusion that the consolidated action must be classified as either limited or unlimited; it cannot be both. (See *Equinix LLC v. County of Los Angeles* (2024) 101 Cal.App.5th 1108, 1116 [" ' "statutes must receive practical, common sense construction" ' "].)

unlimited action upon consolidation, we cannot conclude that Bearman took inconsistent positions in the trial court.

16

Bearman argues that the trial court erred in relying on section 88 because the statute does not "state[] that when a limited action is consolidated with an unlimited action the $25,000 limitation on the limited action lifted." Implicit in his argument is that the unlawful detainer action retained its limited classification after it was consolidated with the Sanchez action for all purposes. To reach this conclusion under section 88, we would need to determine that the unlawful detainer case constituted a separate "civil action or proceeding" for purposes of case classification (§ 88), even after consolidation.

"The phrase 'civil action' is plain and not reasonably susceptible to more than one interpretation." (*Sampson v. Parking Service 2000 Com, Inc.* (2004) 117 Cal.App.4th 212, 223.) "In context, the term 'civil action' unambiguously refers to a court action." (*Ibid.*; see §§ 22, 30 [defining "civil action"].) "An 'action' thus includes all proceedings, at least to the time of judgment, which are required to perfect the rights [of the parties]." (*Palmer v. Agee* (1978) 87 Cal.App.3d 377, 387.) It is not limited to a single cause of action or claim. (*Ibid.*; see *Rodriguez v. Packers Sanitation Services LTD., LLC* (2025) 109 Cal.App.5th 69, 80 ["the complaint in a civil action 'serves to frame and limit the issues' "], review granted May 14, 2025, S290182.)

For purposes of case classification, then, "civil action or proceeding" refers to the entire controversy between the parties, including all claims and cross-claims. (See *AP-Colton LLC v. Ohaeri*, *supra*, 240 Cal.App.4th at p. 507 [court did not err in awarding landlord damages in excess of jurisdictional cap, even though landlord originally filed action as a limited action, where tenants filed a counterclaim for damages in excess of the jurisdictional cap]; *Scott v. Allen* (1935) 4 Cal.App.2d 621, 622 [two causes of action asserted in complaint "were consolidated for all purposes, including the purpose of

17

determining jurisdiction"].) The language utilized in the classification and reclassification statutes support this conclusion. (See, e.g., §§ 85, subd. (c) [stating that one of the conditions for treating a case as a limited civil case is where "[t]he relief sought, whether in the complaint, a cross-complaint, or otherwise" is of a certain type]; 403.030 [permitting reclassification of an action where a party in a limited case "files a cross-complaint that causes the action or proceeding to exceed the maximum amount in controversy for a limited civil case"].)

Applying that definition here, we conclude that upon consolidation with the Sanchez action, the unlawful detainer action was no longer a separate or distinct "civil action or proceeding" under the classification statutes. As previously discussed, complete consolidation means the cases that were consolidated are to be treated as if their causes of action were joined originally. Thus, Villa Zinfandel's unlawful detainer complaint gave rise to one cause of action in the consolidated action, the other being Sanchez's claim to set aside the trustee's deed upon sale. Moreover, since only one judgment is rendered in a completely consolidated action, the court needed to determine whether the $35,000 cap on damages applied to the consolidated action.

The question then is whether the trial court erred in awarding damages in the consolidated action greater than the $35,000 cap applicable to limited actions. This is an act in excess of the court's jurisdiction "if a case is designated as a limited civil case." (*Ytuarte v. Superior Court, supra*, 129 Cal.App.4th at pp. 274–275.) That did not occur with respect to the consolidated action. The unlawful detainer action was classified as limited based on the complaint's caption stating that the action was a limited civil case. (See § 422.30, subd. (a); *Stratton v. Beck, supra*, 9 Cal.App.5th at p.

18

493.) Upon consolidation for all purposes, however, the limited action and the unlimited action were to be treated as if they were a single civil action " 'for the purposes of all further proceedings.' " (*McClure v. Donovan*, *supra*, 33 Cal.2d at p. 722.) "Further proceedings" are the proceedings that occur after consolidation. Villa Zinfandel's "limited" caption was made only with respect to its unlawful detainer claim, before consolidation. No pleadings were filed after consolidation, and it does not appear from the record that documents filed in the consolidated action included a "limited" caption. (See Cal. Rules of Court, rules 2.111(10) [captions in every paper filed in a limited case must include the words " 'Limited Civil Case' "], 3.350(d).) Moreover, the court awarded Villa Zinfandel more than the $35,000 limit only after it determined that consolidation removed the jurisdictional cap on damages.

Citing some of the reclassification statutes, Bearman argues that reclassification of the limited unlawful detainer case required a stipulation or a motion from the parties. To the extent he is suggesting the parties had to follow the procedures set forth in the reclassification statutes to classify the consolidated action as unlimited, we disagree.

Under the reclassification statutes, a case will be reclassified if a party "files" an "amended initial pleading that changes the jurisdictional classification" of a case (§ 403.020, subd. (a)), if a party "files" a cross-complaint in a limited case that "causes the action or proceeding to . . . fail to satisfy the requirements for a limited civil case" (§ 403.030), or if a party or the court moves for reclassification of a case that "has been classified in an incorrect jurisdictional classification" (§ 403.040, subd. (a).) Thus, the reclassification statutes concern situations where the classification of a case changes upon the filing of a pleading or where a case was misclassified. Moreover, a party-filed reclassification motion must be filed "within the time

19

allowed for that party to amend the initial pleading" or to respond to the initial pleading. (*Ibid*.) The parties may also stipulate to reclassification of the case "within the time allowed to respond to the initial pleading." (§ 403.050, subd. (a).)

By their plain language, the reclassification statutes cannot reasonably be construed as governing the classification of a consolidated action. (See *MacIsaac v. Waste Management Collection & Recycling, Inc.*, *supra*, 134 Cal.App.4th at p. 1082 [courts may look to the " 'the reasonableness of a proposed construction' " of a statute].) Any change in the jurisdictional classification of consolidated cases occurs upon complete consolidation, not upon the filing of pleadings, and not because the actions were misclassified. Moreover, consolidation may occur after the deadlines for filing, amending, or responding to a pleading in the consolidated cases have passed. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2025) ¶ 12:357 ["There is no deadline for ordering consolidation; indeed, cases may even be consolidated on the eve of trial."].) Thus, in many consolidated cases, the parties will be unable to correctly classify the consolidated action if the reclassification statutes provide the exclusive procedures for doing so. The Legislature could not have intended for such an unreasonable result. (See *In re Greg F.* (2012) 55 Cal.4th 393, 410 ["courts are obligated to 'adopt a common sense construction' " and avoid one that would result in "unreasonable consequences"].)

Bearman does not otherwise point to, and we have not found, any rules or statutes establishing procedures that courts and/or the parties must follow to classify a consolidated action.[5] Even assuming some affirmative action

---

[5] For the first time in his reply brief, Bearman cites Civil Code section 1952.3, subdivision (a), as support for his assertion that a plaintiff must

20

must be taken to classify a consolidated action as unlimited where one of the cases consolidated was originally classified as limited, "[t]rial courts have inherent and statutory authority to devise and utilize procedures appropriate to the specific litigation before them.  [Citations.]  This authority ' "arises from necessity where, in the absence of any previously established procedural rule, rights would be lost or the court would be unable to function." ' " (*Weiss v. People ex rel. Dept. of Transportation* (2020) 9 Cal.5th 840, 863; see *People v. Arrendondo, supra*, 8 Cal.5th at p. 707 [courts may " ' "create new forms of procedures" in the gaps left unaddressed by statutes and the rules of court' "].)  For example, the court in *James H. v. Superior Court* (1978) 77 Cal.App.3d 169 held that the juvenile court had the inherent power to hold a competency hearing even though there was no statutory procedure for determining a juvenile's competency.  (*Id.* at pp. 175, 177; see also *In re Cook* (2019) 7 Cal.5th 439, 454 [trial court had the inherent authority to hold a *Franklin* hearing to preserve evidence where Pen. Code, § 1203.01 did not prohibit such a hearing].)

Here, on the day of trial, the trial court and the parties discussed "hold over damages" and "further briefing . . . regarding the issues of jurisdictional limit."  The court asked for, and received, briefing from the parties on the issue of whether consolidation had the effect of removing the "limited" jurisdictional cap on Villa Zinfandel's claim for holdover damages.  Thus, the court essentially informed the parties prior to judgment that it was considering whether the consolidated action should be classified as unlimited.

---

make a motion to classify a limited action as unlimited.  That statute does not concern the classification of a consolidated action and instead addresses the situation where possession of the property is no longer at issue in an unlawful detainer action.  (*Ibid.*)

The procedure the trial court used—raising the issue of classification on its own and allowing the parties to brief the issue—mirrors the procedure set forth in section 403.040, subdivision (a), which allows a trial court to reclassify an action on its own motion "at any time," so long as the court gives the parties notice and an opportunity to contest reclassification. (See *Stern v. Superior Court* (2003) 105 Cal.App.4th 223, 230.) "It is not only proper but at times may be necessary for a court to follow provisions of the Code of Civil Procedure which are harmonious with the objects and purposes of the proceeding although those provisions are not specifically made applicable by the statute which creates the proceeding." (*Tide Water Associated. Oil Co. v. Superior Court* (1955) 43 Cal.2d 815, 825.) While there are no statutory procedures for the classification of a consolidated action, there is also nothing in the classification or reclassification statutes prohibiting the trial court from designating a consolidated action as unlimited where the action does not satisfy the conditions for a limited action under section 85.

In sum, under section 88 and the plain meaning of the term "civil action," an action consolidated for all purposes cannot be classified as both limited and unlimited. In this case, pursuant to its inherent authority, the trial court properly determined that the consolidated action was unlimited after providing the parties an opportunity to brief the issue. The court therefore did not err in awarding Villa Zinfandel damages in excess of $35,000.

## II. DISPOSITION

The judgment is affirmed.

22

_____
LANGHORNE WILSON, J.


WE CONCUR:


_____
HUMES, P. J.


_____
BANKE, J.


*Villa Zinfandel, LLC v. Christopher Bearman* / A171987

Trial Court:      Napa County Superior Court

Trial Judge:     Hon. Cynthia Pillsbury Smith

Counsel:

John S. Sargetis for Defendant and Appellant.

McCarthy & Holthus, Melissa R. Coutts; and ZBS Law, Bradford E. Klein for Plaintiff and Respondent.